19 So.2d 138

**GAST v. GAST.**

No. 36718.

June 26, 1944.

Arthur J. O'Keefe, Jr., and Leo L. Dubourg, of New Orleans, for defendant and appellant.

James J. Landry and M. C. Scharff, both of New Orleans, for plaintiff and appellee.

HAMITER, Justice.

The commencement of this litigation dates back to May 15, 1936, at which time Miss Mary Gast instituted suit against her brother, Henry Gast, to recover on a $2000 promissory note which he had previously signed and given to her. The brother answered the petition, offering primarily the defense that the note was without consideration.

On June 15, 1936, after the filing of such suit and before it was tried, there was executed by the said Henry Gast in favor of his brother-in-law, Gus Samuels, and placed of record in the office of the Recorder of Mortgages of the Parish of Orleans, a $2750 mortgage, it covering and affecting the only parcel of real estate in which the mortgagor owned any interest.

The trial of that action on the note resulted in a judgment, dated April 16, 1937, in plaintiff's favor for $2000, plus interest.

As the defendant took no appeal from the judgment, plaintiff caused a writ of fieri facias to issue, and there was seized thereunder and sold at a sheriff's sale held on September 2, 1937, the defendant's undivided one-half interest (being all the real estate that he owned) in and to the mentioned mortgaged property. Before the bidding began, the judgment creditor offered both oral and written protests to the recorded mortgage, granted by Gast in favor of Gus Samuels, she asserting that it was a simulation and given in fraud of her rights and those of other creditors. The adjudicatee was plaintiff, Miss Gast, under a bid of $2000, being the amount of her judgment and the last and highest.

On October 6, 1937, as prayed for in a written motion of Miss Gast, a rule issued by the district court directing Henry Gast, Gus Samuels, the Civil Sheriff of Orleans Parish and the Recorder of Mortgages of that parish, to show cause "why the mortgage hereinabove fully described should not be declared a simulation or in the alternative why it should not be declared legally fraudulent, null and void, as being in fraud of mover and other creditors * * *."

After a hearing on the rule (defendants urged no objection to the form of proceeding), the court sustained an exception of no right of action, previously filed by Gus Samuels, in so far as it concerned the revocatory action (that constituting the alternative demand) of plaintiff; but it reserved to her the right to urge it in a separate and direct action. Further, the court made the rule absolute on the main demand (action en declaration de simulation) to the extent of $750 of the $2750 mortgage, dismissing it as the remaining $2000.

From the judgment plaintiff appealed to the Court of Appeal of the Orleans Circuit. That court, being of the opinion that

it was without jurisdiction, transferred the appeal here. 181 So. 204. While the cause was pending in this court, Henry Gast died; and his heirs were substituted for him on a written motion of plaintiff.

Our review of the matter resulted in the conclusion that the district court had correctly held the mortgage to be no simulation, but that it had erroneously sustained the exception of no right of action and dismissed the revocatory action. As a consequence we remanded the case for trial of the revocatory action, plaintiff's alternative demand. 197 La. 1043, 3 So.2d 173, 174. In the course of our opinion, we said:

"We are of the opinion that the trial court's ruling with respect to the exception of no right of action should be set aside and the exception overruled. However since the trial court did not pass on the merits of the revocatory action the case should be remanded.

"Upon examination of the record we find that the trial court was correct in determining that the mortgage was not a sham or simulation. A pre-existing debt is a sufficient consideration for the mortgage. * * *"

On the remand plaintiff urged the prescription of three years, claiming thereunder that "the alleged mortgage was given for a debt (if such debt existed, which is denied) which was prescribed by the lapse of three years at the time that the mortgage was given." Gus Samuels, the mortgagee and a defendant in rule, on the other hand, filed a plea of prescription of one year based on R.C.C. Article 1987.

The case was submitted for decision on the same testimony taken during the former hearing in the district court. And in due course the court overruled the plea of prescription of one year urged by Gus Samuels, but maintained that of three years tendered by Miss Gast. Further, there was judgment in favor of plaintiff declaring the mortgage in question to be fraudulent, null and void, and of no effect in so far as it purports to bear against the property sold at the mentioned sheriff's sale.

Defendant in rule and the mortgagee, Gus Samuels, is now appealing.

The most serious question presented by the appeal is whether or not plaintiff's revocatory action is barred by the prescription of one year, as urged by appellant, for which provision is made in R.C.C. Article 1987, reading:

"No contract made between the debtor and one of his creditors for the purpose of securing a just debt, shall be set aside under this section, although the debtor were insolvent to the knowledge of the creditor with whom he contracted, and although the other creditors are injured thereby, *if such contract were made more than one year before bringing the suit to avoid it,* and if it contain no other cause of nullity than the preference given to one creditor over another." (Italics ours)

In contending that prescription has not accrued, plaintiff directs attention to and relies on R.C.C. Article 1994, which states:

"The action given by this section, is limited to one year; *if brought by a creditor individually, to be counted from the time*

*he has obtained judgment against the debtor;* if brought by syndics or other representatives of the creditors collectively, to be counted from the day of their appointment." (Italics ours)

For a proper determination of the issue thus presented, it is necessary for us to interpret both of these apparently conflicting codal provisions. This is so because the *institution of the revocatory action* occurred on a date more than one year after the execution of the mortgage by plaintiff's debtor, Henry Gast, in favor of Samuels, but within one year from the time that plaintiff obtained judgment against her said debtor.

Consideration of these articles has been given by this court in many cases heretofore determined. In most instances, however, no satisfactory interpretation has been provided; rather much confusion concerning them has resulted. In some of the opinions the mere statement is made that one of the two articles is applicable, the other not even being mentioned. In others the court, after discussing both, has said that in view of the facts shown, prescription has run under either article. But in those where there was a variance in the time, as in the instant controversy, no uniform rule seems to have been followed, as a consequence of which different results have been reached in cases involving almost identical factual situations.

■ In approaching the problem before us, it is well to observe that there is a vast and clear distinction between a fraudulent simulation and a real contract made in fraud of creditors. The former is

not in reality a contract; it is a mere pretense, a sham, a disguise, the purpose of which is to defeat the rights of creditors with respect to the debtor's property; it is an absolute nullity. The creditor may disregard the fraudulent simulation entirely and seize the affected property under execution, or he may resort to the action en declaration de simulation. But a real contract, although fraudulently entered into, cannot be so disregarded by the creditors. No matter how fraudulent, it must be set aside by a judgment; and for this purpose the revocatory action is provided. McAdam v. Soria, 31 La.Ann. 862; Olivier, Voorhies & Lowrey v. Majors et al., 133 La. 764, 63 So. 323. A contract is deemed to be real, not a simulation, even if the consideration supporting it be inadequate. Brown v. Brown, 30 La.Ann. 966; Lowe v. Garriga, 184 La. 436, 166 So. 131.

■ In our written opinion rendered in the previous hearing, as shown above, we stated that the mortgage given by Gast to his brother-in-law, Samuels, was not a simulation as it was supported by a sufficient consideration, a preexisting debt. After our further study of the record, that conclusion is still entertained by us. Being no simulation then, and under the action furnished by plaintiff's alternative demand which is now before us, the mortgage is to be tested in the light of those articles of the Revised Civil Code that relate to the revocatory action (those commencing with Article 1968 and contained in Section 7, Chapter 3, Title IV).

The property of a debtor is considered as the common pledge of his creditors, lia-

ble for all of the consequences that attend the non-fulfillment of his obligations. Article 1968. From this there results the principle that "every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided." Article 1969. Hence, the law gives to every creditor an action to annul any contract made in fraud of his rights. Article 1970. But this remedy, known as the revocatory action, cannot be resorted to unless the debtor has not property sufficient to pay the debt of the complaining creditor, or the debts of all his creditors where there has been a cession, or any proceeding analogous thereto, Article 1971; neither can it be exercised by an individual creditor until the debt has been liquidated by a judgment, unless the defendant (person favored by the fraudulent contract) in such action be made a party to the suit for liquidating the debt brought against the original debtor, Article 1972. The joinder of parties, as just suggested, is permitted, Article 1975. Only those contracts can be avoided by the action which are made in fraud of creditors, and which, if carried into execution, would have the effect of defrauding them. Article 1978.

To be found in Articles 1979, 1981, 1982 and 1983 are provisions relating to the annullment of an onerous contract, such as we have here, when made in fraud of creditors. The last two read:

"1982.—If the party, with whom the debtor contracted be in fraud as well as the debtor, he shall not, on the annulling the contract be entitled to a restitution of the price or consideration he may have paid, except for so much as he shall prove has inured to the benefit of the creditors by adding to the amount of property applicable to the payment of their debts; but if the only consideration be a sum due from such debtor to the party with whom he contracted, then the only restitution to be made is the placing the parties in the situation in which they were before the contract complained of was made."

"1983.—But if such fraud consisted merely in the endeavor to obtain a preference over other creditors, for the securing of payment of a just debt, under circumstances in which by law the endeavor to obtain such preference is declared to *be a constructive fraud* in such case the party shall only lose the advantage endeavored to be secured by such contract, and shall be reimbursed what he may have given or paid, but without interest; and he shall restore all advantages he has received from the transaction." (The correct translation of the French text relating to the above emphasized phrase, the italicizing of which is ours, is "create a presumption of fraud." Louisiana Legal Archives, Vol. 3, Part II.)

From a close and careful study of said Article 1982 it will be noticed that its provisions are applicable when the parties have contracted with the deliberate intent and purpose of defrauding other creditors, when active fraud has been committed. But this is not necessarily so with Article 1983. This article, which significantly

commences with the connective "but" that indicates a contrast, contemplates a situation, we think, where a debtor, under circumstances that create the presumption of fraud, secures the payment of a just debt due to a particular creditor by encumbering with a contract property of a value commensurate with the amount that is justly due and owing, thereby granting a mere preference over other creditors. The mentioned circumstances that create the presumption, the constructive fraud, are stated in Article 1984, reading:

"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor."

Then, in addition to those contracts which dispose of property, there are other acts of the debtor done in fraud and to the injury of the creditors which can be attacked by means of the revocatory action. This is made clear by Article 1989, which recites:

"Not only contracts which dispose of property, but all others which are made in fraud of creditors, and deprive them of their recourse to the property of their debtor, come within the provisions of this section. The renunciation of a succession or other right to property, the release of a debt without payment, or any other act of this kind, may be avoided by creditors, when done to their prejudice, under the rules above established."

This brings our discussion to those articles dealing specifically with prescription respecting the revocatory action, those which furnish the primary question for determination in this cause. Article 1987, above quoted and which provides for the bringing of the action within one year from the date of the injurious transaction, speaks of a contract made for the purpose of securing a just debt and which contains no other cause of nullity than the preference given to one creditor over another. Because of the restrictive language thus used, the prescription of that article, obviously, is applicable only and limited to the situation contemplated by the aforeanalyzed Article 1983, i.e. where payment of a debt, justly due and owing, is secured with property approximately equal in value to the indebtedness and where there exists constructive fraud because of the obligor's insolvency of which the obligee had knowledge. It does not pertain to those contracts that are permeated with active, deliberate or malicious fraud, confected by the parties with the intention of defrauding creditors; nor does it apply to those other acts specifically covered by Article 1989. It is clearly an exception to the general rule which Article 1994 announces by stating, without employing any restrictive phraseology regarding its application, that, "The action given by this section, is limited to one year; if brought by a creditor individually, to be counted from the time he has obtained judgment against the debtor * * *."

Conclusively shown in this case is the fact that the property mortgaged by the

debtor to his brother-in-law was the only property from which his creditors could hope to satisfy their claims, and of this fact the mortgagee had full knowledge. These circumstances alone, as stated in Article 1984, would create a presumption of the existence of fraud, would constitute constructive fraud. But, notwithstanding that, if the mortgage was given to secure a just debt, meaning a sum justly due and owing and being proportionate with the value of the property encumbered, thereby granting a mere preference to the mortgagee, the contract could be set aside only by bringing the action within a year from the date of its confection, as provided by Article 1987. The action was not so instituted. On the other hand, if the contract did not amount to merely preferring one creditor over another, by securing the payment of a just debt, then the general rule of prescription of Article 1994 is applicable and this action was timely brought, for it was filed within one year after plaintiff obtained judgment against her debtor.

As before shown, we held on the previous hearing of the case in this court, and we still think correctly, that the mortgage was not a simulation; the evidence disclosed some pre-existing debt that was a sufficient consideration for the contract. And we remanded the case for trial of the revocatory action, the proceedings of which are presently being reviewed. In the course of our opinion we offered the comment that "the preponderance of the evidence is to the effect that Samuels had loaned the defendant money from time to time amounting in all to $2000." Since the revocatory ac-

tion was not then before us such comment was unnecessary.

▮ The revocatory action is now squarely presented for our consideration, and, in our study of the evidence to determine it, we are satisfied that the indebtedness of Gast to Samuels did not nearly approximate the mortgaged property's value which was at least $2000, the property having brought that amount at the sheriff's sale. And we are presently of the belief that the purpose underlying the transaction was something other than merely to secure the payment of a just debt. There existed, in our opinion, a specific intention to defraud plaintiff. This conclusion is based on the hereinafter detailed facts and circumstances disclosed by the record; and obviously it is in accord with the finding of the trial judge.

No money passed between the parties at the time of the execution of the contract. According to Samuels, who is Gast's brother-in-law and the mortgagee, the consideration for the mortgage was advances made to Gast from time to time, ranging in amounts from $5 to $75, over a period of more than 20 years. Neither the date nor the sum of any particular loan could be given. It was only after Miss Gast had instituted suit that the parties decided that a securing of payment was necessary. Then they met and totaled the numerous separate loans that were evidenced by receipts which Samuels had previously given to Gast; and to the total there was added interest of $750 concerning which no former agreement had existed. Thereupon the mortgage was executed for the

aggregate amount, and the receipts, used in the computation, were destroyed.

Some of those facts are clearly revealed by the following testimony given by Samuels which we deem pertinent to quote:

"Q. Did Mr. Gast owe you $2750 on that date? A. No, not that full amount, but with interest it run to that.

"Q. Well now, will you explain what you mean by that? A. Well, Mr. Gast had been borrowing money from me for, oh, more than 20 years, different amounts, and we just let it rock along until I found out that suit had been brought against him, and then I asked him to give me some security for his money and he gave me—in fact, I asked him if he couldn't secure me—

"Q. Well, how did you know how much he owed you? A. Well, whenever he would borrow money I would take a receipt—I would write out a receipt and he would sign it.

"Q. Have you those receipts with you? A. No, I gave them to him when he gave me the mortgage.

"Q. You gave him the receipts? A. Yes.

"Q. And they had run over a period of 20 years? A. Some of them.

 *     *     *     *     *     *     *

"Q. Can you tell us what was the first sum you loaned him—how much it was? A. If I would get back to that I would say when we were boys I used to lend him a quarter. We used to work in the cotton mill together.

"Q. That ran back a long time? A. Yes. It started around maybe five or ten dollars or something of that kind.

"Q. Do you know about when that was? A. Well, that was more than 20 years ago, the first of it, but then he has been paying—you understand, I don't mean to say that this whole thing has gone on, but from time to time he would give me some money, and when he would give me some money I would return him his receipts. I only kept the receipts that were unpaid.

"Q. What was the last sum that you loaned him? A. I don't know. Until about—I don't recollect.

"Q. Do you recall when you made the last loan? A. About two or three years ago.

"Q. Well, was it for a large sum or a small sum? A. Not a very large sum, the last amount. In fact, for the past four or five years it hasn't been very large amounts. Three or four years ago it was some pretty good amounts.

"Q. Can you tell us how much you did lend him within the last two or three years? A. No. Sometimes it would be $50.00, $25.00, $75.00—something like that."

Moreover, it appears that for eight years prior to the trial of this case Samuels had no income other than that from a small printing business operated by him and his wife, respecting which no books were kept and its assets had an assessed valuation of $100, and that the bank account carried by him contained only the amount needed for the operation of that business.

Neither was Gast able to recall any specific loans, along with the dates thereof, that the brother-in-law made to him. He merely remembered that the indebtedness began ten or eleven years back (Samuels said more than 20 years) and that the advances varied from $10 to $300 (Samuels said $5 to $75). It was not until the mortgage was given, on the tabulation of the receipts, that he knew exactly what was owed.

With further reference to those receipts, both Gast and Samuels testified that they were considered and the indebtedness computed in the presence of another person. Yet the testimony of that person, who was available for testifying as is conclusively shown by the record, was not taken at the trial. To say the least this is a suspicious circumstance.

Therefore, as the contract between Gast and Samuels did not amount to merely the giving of a preference for the securing of a just debt, the kind of transaction to which Articles 1983 and 1987 are appropriate, it must be held that Article 1994, which states the general rule of prescription in revocatory actions, is applicable to this cause. By applying that article the conclusion is reached that plaintiff's action is timely; it was brought within one year after the obtaining of judgment against her debtor.

Supporting this holding is our decision in Olivier, Voorhies & Lowrey v. Majors et al., supra. There we were considering a real contract, not a simulation, that not only gave a preference to one creditor over another but one which also was made to defraud other creditors. It was because of

the active fraud attending the confection of the transaction that we held applicable the prescription of Article 1994, rather than that of Article 1987. And in the course of the opinion we said [133 La. 764, 63 So. 327]:

"But the contract sought to be revoked by plaintiff is not to secure a just debt. It is one not only giving a preference to one creditor over another; it is in fraud of the other creditors of T. J. Majors, even if the contract is not wholly fraudulent or simulated. Article 1994 has application in such case, and the right of a creditor to proceed is limited to one year from the date of his judgment.

\*　　　\*　　　\*　　　\*　　　\*

"T. J. Majors being insolvent, it was his sacred duty to give effect to these principles of equity. It appears that he disposed of his whole property while the plaintiff was prosecuting to judgment its claim for the debt due it. This was inequitable, and a violation of an express provision of law. We believe that he did so to put himself in a position to entirely defeat the demands of plaintiff. The just principle of the Spanish law still prevails, that the debtor who sells the whole of his property to the prejudice of a creditor is presumed to do it maliciously and with the intention to defraud.

"The evidence leads us to conclude that the codefendant knowingly aided in carrying these unlawful intentions of his cousin, by purchasing, knowing him to be insolvent, all of his assets, out of which plaintiff could realize its debt. It is impossible to believe that he purchased this stock merely to speculate on the misfortune of his

cousin. We must exercise the discretion confided in us by the Code, and look through the apparent into the real transactions of the parties, which are covered by but a thin veil.

"We could not doubt the fraudulency of the transaction, even if the parties were strangers. The presumption is greatly increased by their relationship of cousins, and their close intimacy."

It is unnecessary for us to pass upon plaintiff's plea of prescription of three years, to which reference is made in the first part of this opinion, in view of our announced holding.

The judgment is affirmed.

O'NIELL, C. J., concurs in the decree.

**19 So.2d 144**
**WALSH v. BUSH.**
No. 37186.
June 26, 1944.

For opinion of Court of Appeal, see 20 So.2d 190.

George Piazza, of New Orleans, for plaintiff and appellant.

Maurice B. Gatlin, of New Orleans, for defendant and appellee.

ODOM, Justice.

This is a suit by a tenant against his landlord to collect damages in the sum of $5030. As a cause of action plaintiff alleged that in September, 1938, he leased from the defendant half of a double cottage in New Orleans; that the lease was verbal from month to month, at a monthly rental of $25, and that the said lease included a garage "located in the yard of the