636 So.2d 1013 (1994)
Eleanor Faye WARREN, et al.
v.
Ned A. BERGERON, et al.
No. CA 93 0899.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Rehearing Denied May 18, 1994.
J. Minos Simon, Lafayette, for plaintiffs-appellants, Eleanor Faye Warren, et al.
Robyn F. Moss, Houma, for defendant-appellee, B.W.B. Controls, Inc.
Gerald F. Lofaso, Houma, for defendant-appellee, Charley J. Schrader, Jr.
Ned A. Bergeron, defendant-appellee, in pro. per.
Roy Neal, Sr., in pro. per.
Elton A. Darsey, Houma, for defendant-appellee, Jerry J. Larpenter, Sheriff of Terrebonne Parish.
*1014 Kenneth Watkins, Houma, for defendant-appellee, Ray J. Chaisson and B.W.B. Controls, Inc.
Eldon R. Harrall, Jr., Houma, for defendant-appellee, Charley J. Schrader, Jr.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
The primary issue before us is whether a Revocatory Action may be used to annul a security device consisting here of an act of pledge securing a legitimate debt of past and future attorney fees, the advancement of costs, and legal expenses owed by an insolvent debtor/obligor to his attorney. We adopt the factual findings of the trial judge as stated in his written reasons for judgment.
Plaintiffs, judgment creditors by virtue of a civil suit for damages against Ned Bergeron, seek to revoke a pledge of stock which Mr. Bergeron made in favor of Charley J. Schrader, Jr. and Schrader and Harrall, A Professional Law Corporation to secure the payment of legal fees. Plaintiffs contend that the pledge was executed by Mr. Bergeron in an attempt to give an unfair preference to one creditor over another and that this preference is subject to revocation under the Louisiana Civil Code Articles governing revocatory actions.
Ned Bergeron and George Warren were the owners of BWB Controls, Inc. On February 8, 1987, George Warren was shot and killed. Ned Bergeron was arrested on July 4, 1987 and charged with having engaged in a conspiracy to kill Mr. Warren. Mr. Schrader and his law firm were hired by Mr. Bergeron to defend him against potential civil suits which would be brought against him by Mr. Warren's survivors. Mr. Bergeron and Mr. Schrader agreed that Mr. Schrader's fee would be based on an hourly rate plus expenses. Mr. Schrader and his firm began investigating the facts before any suit was filed. Shortly after August of 1987, Plaintiffs filed a RICO suit in federal court in which they also asserted a pendent state claim for wrongful death. Among others, they sued Mr. Bergeron. Mr. Schrader represented several defendants in the suit along with Mr. Bergeron. In December of 1987, Plaintiffs filed a wrongful death suit in state court naming Mr. Bergeron as a defendant. Mr. Schrader and his firm handled the defense of that suit. For some time both suits were pending but, eventually, the RICO suit was dismissed. Initially, the fees Mr. Bergeron was incurring were being paid but, by the spring or summer of 1989, Mr. Bergeron was having difficulty paying for Mr. Schrader's services due to a cash flow problem. Mr. Schrader wrote to Mr. Bergeron in June of 1989 and told him that he'd have to stop representing Mr. Bergeron because of the nonpayment of his fees. Mr. Bergeron told him that he couldn't hire another lawyer and asked him to continue handling the case. Mr. Schrader agreed to continue handling the case. Mr. Schrader agreed to continue representing Mr. Bergeron if he would pledge his stock in BWB to secure payment of the fees. Mr. Bergeron agreed and physically delivered the stock in pledge to Mr. Schrader sometime before July 1, 1989. At that time the pledge agreement was strictly oral. As the trial date of the state suit approached, Mr. Schrader decided that it would be best to reduce their agreement to writing. On October 23, 1989, several days before the trial of the wrongful death suit began, Mr. Bergeron signed a collateral pledge note in the amount of $150,000.00, payable on demand, with interest at the rate of 12% per annum, which contained a provision for 25% attorneys fees if the note should be placed in the hands of an attorney for collection. Mr. Bergeron also execute [sic] a pledge agreement. The agreement was actually a collateral pledge agreement. It recited that the note executed was not for a specific debt but was given to secure the payment of Mr. Bergeron's attorneys fees, earned and to be earned, advances made and to be made and court costs and other expenses paid or to be paid for various legal work done and to be done for and in representation of Mr. Bergeron, particularly but not limited to legal work in the lawsuits brought against Mr. Bergeron by Eleanor Faye Warren et al in the Federal *1015 and State courts. The October pledge agreement was not notarized because Eldon Harrall, the notary Mr. Schrader expected to use, was unavailable on the day the agreement was signed. Shortly after the pledge agreement was signed, Mr. Schrader and two members of his office staff traveled to Lafayette for the trial of the wrongful death suit. The trial lasted until November 18, 1989 when the jury returned a verdict against Mr. Bergeron in the amount of $4,600,000.00. On November 20, 1989, Mr. Schrader had Mr. Bergeron execute the pledge agreement in authentic form. A new instrument was prepared, identical in substance to the October 23, 1989 act. Although signed on November 20, 1989, it bore an effective date of October 23, 1989. The promissory note Mr. Bergeron signed on October 23, 1989 was paraphed for identification with the pledge agreement executed on November 20, 1989, Mr. Bergeron and his wife entered into a separation of property agreement on November 20, 1989 by which they divided their BWB stock equally. On November 21, 1989, Mr. and Mrs. Bergeron delivered the new stock certificates to Mr. Schrader and executed a document confirming that the stock was held in pledge by Mr. Schrader and his law firm. Mr. Schrader continued to represent Mr. Bergeron throughout the course of the appeal of the jury verdict, although he did not bill for those services rendered. The jury verdict of $4,600,000.00 was reduced on appeal to $3,048,676.00 by judgment of the Third Circuit Court of Appeal dated April 16, 1992. Prior to the judgment's becoming final, Plaintiffs began efforts to ensure collection. They invoked a judgment debtor proceeding against Mr. Bergeron during the course of which they discovered that Mr. Bergeron had pledged his stock to his attorney. They then instituted a garnishment proceeding which they converted to a revocatory action by an amended petition filed on September 17, 1990 wherein they sought to revoke the pledge.
The trial judge concluded that pursuant to Louisiana Civil Code Articles 2036 to 2043, the Revocatory Action was not available to annul the pledge at issue. From the judgment in favor of defendants Schrader and his law firm, plaintiffs appeal alleging as a sole assignment of error, the refusal of the district court to revoke the pledge because it increased Bergeron's insolvency and/or constituted fraud. No evidence was presented and no claim is made that the promissory note was not for a just debt.
Plaintiffs contend that in brief the promissory note as well as the act of pledge should be annulled because they increased Bergeron's insolvency and/or these acts constitute fraud thus supporting a revocation of the entire transaction. In the "Supplemental Memorandum in Support of Plaintiffs' Revocatory Action", plaintiffs stated that:
[t]he pleadings certainly do encompass an attack on the obligation incurred by Bergeron; however, that nomenclature may be a little bit misleading. The plaintiffs "attack" is not necessarily on the contract entered into between Bergeron and Schrader whereby Schrader was hired as Bergeron's attorney, but rather on the method (detrimental to the plaintiffs' right of recovery) by which Bergeron and Schrader sought to ensure that Schrader would be paid in preference to plaintiffs. Whether Bergeron had a right to hire an attorney, and whether Schrader actually performed the services alleged to have been performed by him as Bergeron's attorney are immaterial to the matter before the court. As this court [trial court] pointed out in its judgment of August 29, 1990, plaintiffs do not allege that the obligation sought to be revoked is a simulation but rather, that it is an unlawful attempt to grant a preference to one creditor over another.
. . . .
It is undisputed, though difficult to swallow, that the ten (10) shares of stock in BWB Controls, Inc. make up virtually the only asset of Bergeron available to his creditors. Plaintiffs attack the pledge agreement, which consists of a promissory note, a contract of pledge and actual delivery of the stock to Schrader. However, practically speaking, it is really the contract *1016 of pledge which is attacked since absent the contract of pledge, Schrader would have no basis on which to assert a right to retain the stock. By way of explanation, had there been no contract of pledge, there would have been no need for plaintiffs to assert a revocatory action since the stock certificates would have been subject to seizure by the Sheriff on behalf of plaintiffs, whether in the hands of Schrader or in the hands of Bergeron. The revocatory action was necessitated by Schrader's assertion of a privilege on the stock created by the pledge, and his refusal to surrender the stock to the Sheriff in the garnishment proceedings. (Emphasis Original)
Thus the trial court was correct in holding that plaintiffs are not attacking the underlying obligation which is the payment of attorney fees for the legal defense of a defendant in a civil suit. Plaintiffs are really attacking the preference given to Schrader above Bergeron's other creditors by the pledge. It is uncontested that Bergeron was insolvent as defined in Louisiana Civil Code article 2036, at the time the debt to Schrader arose.
Pursuant to the 1984 Obligations Revision of the Civil Code, Title IV of Book III of the Louisiana Civil Code of 1870, formerly entitled "Of Conventional Obligations" and containing Civil Code articles 1761-2291, was amended and reenacted by Acts 1984, No. 331, Section 1, effective January 1, 1985. The revision consists of Civil Code articles 1906 to 2057, titled "Conventional Obligations Or Contracts." Under the prior law the Revocatory Action, which deals with the protection of creditors, was contained in former articles 1968-1994. It is now contained in articles 2036-2043.
Under the prior law, contracts or acts transferring ownership of property or giving a determinate right on it were within the purview of the Revocatory Action. La.C.C. arts. 1968 and 1969 (1870). The prerequisites for the Revocatory Action under the former law were: "(1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor and (4) preexisting and accrued indebtedness." Copher v. Ormond Builders, Inc., 467 So.2d 1344, 1346 (La.App. 5th Cir.1985). A contract was deemed to have been made in fraud of creditors when the obligee knew the obligor was insolvent and the contract gave an advantage to the creditor/obligee over other creditors of the obligor. La.C.C. art. 1984 (1870). If the fraud consisted merely of giving a preference to one creditor over other creditors to secure a just debt, and the value of the security was commensurate with the amount that was justly due and owing, the recourse of the disadvantaged creditors was that the advantaged creditor would lose the advantage secured by the contract. La.C.C. art. 1983 (1870). See Gast v. Gast, 206 La. 285, 19 So.2d 138 (La.1944). Thus, under the former law the collateral pledge agreement at issue here may have been subject to annulment if the sole cause of nullity or "fraud" consisted of merely giving an advantage to one creditor to secure the payment of a just debt.
In the 1984 Obligations Revision several substantive changes were made in the Revocatory Action. Under the present law "An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." La.C.C. art. 2036. The primary change from the prior law is that the fraud element of the prior law has been abandoned for the objective test of whether the act causes or increases the obligor's insolvency. La.C.C. art. 2036, comments (a) and (b); See Thomassie v. Savoie, 581 So.2d 1031 (La.App. 1st Cir.1991), writ denied, 589 So.2d 493 (La.1991). Another major change is that the substance of former articles 1968, 1983, and 1984 which dealt with the giving by the obligor of an advantage or preference to a creditor over other creditors of the obligor, were not reproduced in the 1984 Obligations Revision. Comment (g) of article 2036 provides: "The articles in this section do not address situations in which an already insolvent obligor gives an unfair advantage to one of his creditors. Situations of that kind are regulated by federal bankruptcy law. See 11 U.S.C. sec. 547."[1] The *1017 supreme court has held "that the Legislature is presumed to have enacted a statute in the light of preceding statutes involving the same subject matter and decisions construing such statutes, and, where the new statute is worded differently from the preceding statute, the Legislature is presumed to have intended to change the law." Louisiana Civil Service League v. Forbes, 258 La. 390, 246 So.2d 800, 809 (1971), overruled on other grounds, Barnett v. Develle, 289 So.2d 129 (La.1974).
The new law eliminates the availability of the Revocatory Action for the mere giving of a preference to a creditor by means of a security device for the payment of a just debt, when the value of the security is commensurate with the amount of the debt. This is also evidenced by the minutes of the December 11, 1981, meeting of the Council of the Louisiana State Law Institute. They reveal a concern by members that the Civil Code Revocatory Action for any act deemed to be in fraud of creditors under the then existing law (prior to the Obligations Revision of 1984) had become obsolete due to the emergence of federal bankruptcy law. There was debate over whether a state remedy should continue to be available to creditors at all because of the possibility that debtors and certain of their creditors would possibly be subject to harassing lawsuits under both federal and state law. Other members of the Council argued that the revocatory remedies under the federal bankruptcy code and civil code applied to different situations, i.e., the revocatory action under the civil code is applicable to a creditor acting alone, before bankruptcy is filed. After much discussion the Council reached a compromise on the issue by eliminating the availability of the Revocatory Action to annul acts granting a preference to one creditor over another. Thus, acts granting only a security interest would be revocable only in bankruptcy and those causing or increasing insolvency would be revocable under the civil code. Articles 2036-2043 was enacted by the legislature as recommended by the Louisiana State Law Institute.
Plaintiffs have not alleged that the attorney fee contract was a simulation or a fraud, that the pledge was actually a dation, that the fee was not earned, or that the value of the property or stock pledged was vastly greater than the amount of the debt which was justly due and owing. Such a debt and the pledge securing that debt may be subject to revocation under the civil code. However, because the only alleged complaint is the obtaining of a preference or advantage by one creditor over another for the securing of payment of a just debt, the judgment of the trial court is correct. We know of no policy considerations which would require us to circumvent the clear meaning and intent of the law.
Accordingly, we affirm the judgment of the trial court. Costs of this appeal are assessed against plaintiffs.
AFFIRMED.
NOTES
[1] Section 547 of the federal bankruptcy code deals with preferences or privileges among creditors and enumerates the situations in which the trustee may and may not revoke or avoid certain transfers of property made by the debtor to a creditor.