396 So.2d 1386 (1981)
Jarrell MORGAN, Plaintiff-Appellee,
v.
Harry S. GATES et al., Defendants-Appellants.
No. 14505.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
*1387 James B. Wells and Associates by James B. Wells, Bossier City, for defendants-appellants.
Donald R. Miller, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and JASPER E. JONES, JJ.
HALL, Judge.
Plaintiff, judgment creditor of Harry Gates, filed this action in April, 1980 seeking to annul a certain sale by Gates to his parents of immovable property in Webster Parish. Plaintiff alleged that the sale of the immovable property by the defendant debtor to his parents, who were also named defendants, was a simulated sale or, alternatively, was a sale in fraud of his rights as the vendor's creditor. The trial court ruled in favor of plaintiff and ordered the purported sale annulled and set aside. Defendants appealed.
On October 8, 1979, plaintiff filed suit against defendants Harry and Rubert Gates which culminated in a judgment against those defendants, in solido, for $10,000 plus interest and attorney fees. On October 23, 1979, after plaintiff's original suit was filed but before judgment was rendered on January 30, 1980, Harry Gates executed an act of sale to his parents conveying three lots in a Webster Parish subdivision together with all buildings and improvements thereon. The act of sale recited a cash consideration of $5,000 plus assumption of a $13,525 mortgage, a $805.07 judgment, a $17,700 mortgage, and a $96.50 judgment. It was established at trial that all of the assumed debts had been satisfied prior to the transfer except the $17,700 mortgage which had a balance of $17,400.
When the act of sale was signed, Harry Gates was in severe financial straits. He testified as to his numerous outstanding debts which totaled over $50,000 at the time the act of sale was signed. His principal asset was his equity in the property he sold to his parents; he valued the property at $30,000, leaving an equity of approximately $12,600. The value of his other assets, automobiles *1388 and equipment, was not established. Gates testified that his parents were generally aware of his financial condition on the date the act was signed.
When questioned about his motive for executing the deed to his parents, Harry Gates responded that he needed some cash to pay overdue debts on two vehicles so that they would not be seized. He stated that he received the recited cash consideration from his parents in the form of a cashier's check and had used the proceeds to pay some past due notes. The cashier's check was filed into evidence. Gates further testified that the parties did not execute any counter letters nor did the parties agree that Harry was to repay the $5,000 consideration.
The testimony of Vernon Gates, father of Harry Gates, was in accord with the testimony of his son. Vernon Gates testified that his son needed some cash, but that he, Vernon, had loaned Harry $7,000 in the past and he felt it would be unfair to his other children to give Harry more money without some collateral. Therefore, Vernon and his wife agreed to purchase Harry's property for $5,000 cash and assumption of the mortgage on the property.
Harry continued to live in the house located on the property. His parents, the vendees, never occupied the premises. Additionally, Harry Gates filed a homestead exemption on the property subsequent to October 23, 1979. Although Harry continued to live on the premises and did not pay rent, his parents gave him the money to pay the house note each month. The vice president of the bank holding the mortgage on the property testified that he and the other bank officers were unaware of the transfer. Harry Gates continued to pay the mortgage note in person each month with funds given to him by his mother.
The plaintiff testified that he had obtained a judgment against Harry and Rubert Gates, in solido, that he had not been paid any sum under the judgment and that his judgment debtor has not pointed out to him any property or any way he could collect his judgment.
The trial court apparently determined that the purported transfer was a simulated sale based on LSA-C.C. Art. 2480 which creates a presumption of simulation if the thing sold remains in possession of the vendor. The presumption may be rebutted by proof establishing the good faith of the parties and the reality of the sale. Although the trial court determined that the vendees were acting in good faith, a conclusion we agree with, it apparently found that the parties had not sufficiently established the reality of the sale.
We hold that the sale in this case was not a simulation because the parties to the sale established that consideration had been given by the vendees and received by the vendor. The jurisprudence of this state is settled that if any consideration, however small, is given for the property, the sale may not be set aside as a simulation. Russell v. Culpepper, 344 So.2d 1372 (La.1977); Bell v. Bell, 339 So.2d 1333 (La.App. 3d Cir. 1976); Adams v. Trichel, 304 So.2d 740 (La. App. 2d Cir. 1974). The trial court was in error in declaring the sale a simulation.
As noted above, plaintiff's petition sought to have the sale set aside on the grounds that it was a simulated sale or, alternatively, on the grounds that it was a contract made in fraud of his rights as a creditor. While plaintiff's attempt to have the sale declared a simulation is without merit, his alternative revocatory action has merit. The rules governing revocatory actions, principally LSA-C.C. Arts. 1968, et seq., form the basis for our opinion.
The revocatory action is an action which the law grants to every creditor to annul any contract made in fraud of his rights. LSA-C.C. Art. 1970. In order to exercise this action, it must be established that the debtor does not have property sufficient to satisfy the debt of the complaining creditor. LSA-C.C. Art. 1971. Additionally, the complaining creditor must obtain a judgment against his debtor which liquidates the debt owed. LSA-C.C. Art. 1972.
The following articles impose additional proof requirements on the creditor bringing the revocatory action:
LSA-C.C. Art. 1978:

*1389 "No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury."
LSA-C.C. Art. 1979:
"If the contract be onerous, and the original debtor made it with intent to defraud his creditors, but the person, with whom he contracted, was in good faith, the contract can not be annulled, except under the circumstances and in the manner hereinafter provided."
The prerequisites for the revocatory action have been summarized as follows: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor; and (4) preexisting and accrued indebtedness. Redding v. Rupp, 375 So.2d 761 (La. App. 4th Cir. 1979), writ denied 378 So.2d 437 (La.1979); Perigoni v. McNiece, 307 So.2d 407 (La.App. 4th Cir. 1974); National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2d Cir. 1967).
The plaintiff in this case has adequately established that he stood as a creditor of Harry Gates at the time of the purported transfer; thus, there was an accrued indebtedness at that time. It is also clear from the testimony of Harry Gates that he was in insolvent circumstances. LSA-C.C. Art. 1983 defines insolvency as the situation which exists when the whole property and credits of a person are not equal in amount to the debts due by the person. Further, if the person alleging the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount. LSA-C.C. Art. 1985. Plaintiff established that Harry Gates had outstanding debts totaling over $50,000. The defendants failed to counter this evidence; therefore, it is clear that Harry Gates was insolvent at the time of the alleged transfer.
It is also clear that the purported transfer is injurious to the plaintiff-creditor. Harry Gates apparently has no property or credits on which plaintiff's judgment can be executed except the property he transferred to his parents. We also find that Harry Gates attempted the transfer in order to remove this asset from the reach of his creditors, or at least in order to give his parents as creditors a preference over other creditors. The timing of the transfer, occurring shortly after the original suit was filed by plaintiff, and the consideration paid for the property support this finding.
All of the prerequisites to successful prosecution of the revocatory action were established, that is, insolvency of the debtor, injury to the creditor, intent by the debtor to defraud the creditor and a preexisting and accrued indebtedness.
The elements of the good or bad faith or fraudulent intent of the transferees and of the value of the property as compared to the price paid are to be considered in determining the relief to which the plaintiff is entitled under the articles of the Civil Code. These considerations are complicated in this case because the transaction, although clearly onerous, involved a cash consideration of $5,000 and a dation en paiement to the extent of the $7,000 previously advanced by the parents to their son which was considered a part of the consideration by the parties.
LSA-C.C. Art. 2658 allows an insolvent debtor to lawfully sell for the price which is paid to him but forbids the insolvent debtor to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due. LSA-C.C. Art. 1984 provides that every contract shall be deemed to have been made in fraud of creditors when the obligee knew that the obligor was insolvent and when the contract gives to the obligee, if he be a creditor, any advantage over other creditors of the obligor.
LSA-C.C. Art. 1979, quoted above, prohibits the annulment of an onerous contract when the party with whom the insolvent debtor contracted was in good faith. An exception to this rule is found in LSA-C.C. Art. 1981:

*1390 "If the contract be onerous, but made in fraud on the part of the debtor, but in good faith on the part of the person with whom he contracted, if the value of the property transferred by such contract exceed by one-fifth the price or consideration given for it, the creditors may annul the contract, and take back the property on paying the price or the value of the consideration with interest, but in this case they shall not receive the fruits."
LSA-C.C. Art. 1982 provides that if the party with whom the debtor contracted be in fraud as well as the debtor, he shall not, on the annulling of the contract, be entitled to a restitution of the price or consideration he may have paid, except for so much as he shall prove has inured to the benefit of the creditor. If the only consideration be a sum due from such debtor to the party with whom he contracted then the only restitution to be made is placing the parties in the situation in which they were before the contract complained of was made. LSA-C. C. Art. 1983 provides that if the fraud consisted merely in the endeavor to obtain a preference over other creditors, for the securing of payment of a just debt, the endeavor to obtain such preference is considered a constructive fraud and the parties shall only lose the advantage endeavored to be secured by such contract, and shall be reimbursed what he may have given or paid, but without interest. It has been held that Article 1982 is applicable only when the parties have contracted with the deliberate intent and purpose of defrauding other creditors, that is, when active fraud has been committed. Article 1983 is applicable where there is a presumption of fraud arising out of the granting of a mere preference to one creditor over another creditor as provided in Article 1984 and in Gast v. Gast, 206 La. 285, 19 So.2d 138 (1944).
LSA-C.C. Art. 1977 provides that the judgment in a revocatory action shall be that the contract be avoided as to its effect on the complaining creditors and that the property taken from the original debtor's estate by virtue thereof or the value of such property to the amount of the debt, be applied to the payment of the plaintiff. Under Article 1977 the effect of a judgment of revocation is that the contract is avoided only as to the complaining creditor and the property is applied to the payment of the judgment of that creditor; the judgment of revocation does not inure to the benefit of other creditors. Martin Lebreton Insurance Agency v. Phillips, 364 So.2d 1032 (La.1978).
From all of this we draw these conclusions. To the extent that the transaction complained of amounted to a dation en paiement to one creditor in preference to another, a forbidden act amounting to constructive fraud, the transaction is subject to revocation. It follows that the part of the consideration representing an existing debt for which the property was given in payment, amounting to $7,000, should not be considered in determining whether the price paid was more than 1/5 less than the value of the property in considering the applicability of LSA-C.C. Art. 1981. The property was valued at $30,000; the price paid was $5,000 cash and the assumption of a mortgage on which the balance was $17,400, or a total price of $22,400. The value of the property exceeded by 1/5 the value of the consideration paid and, consequently, may be annulled, even if the vendees in this case were in good faith.
We concur in the trial court's finding that the vendees were in good faith in the sense that they had no deliberate intent and purpose of defrauding other creditors and had no active fraudulent intent. There was, however, constructive fraud in connection with the dation en paiement aspect of the transaction. The transferees' right to restitution of the consideration paid, therefore, is governed by Article 1983 which applies when the fraud consists merely in the obtaining of a preference over other creditors for the payment of a just debt, and not by Article 1981 which applies when the transferee is entirely in good faith and not by Article 1982 which applies when the transferee deliberately intends to defraud other creditors.
Putting all this together, it is our conclusion that the sale should be annulled only as it affects the rights of the plaintiff judgment creditor and only upon restitution to *1391 the defendant transferees of the $5,000 consideration paid by them for the property. Accordingly, the judgment will be recast to reflect that result.
The district court judgment was also rendered against Rubert Gates and the Webster Parish Clerk of Court. These parties have no interest in the outcome of this litigation and there is no reason they should be cast in judgment, although named as defendants.
The judgment of the district court is reversed and set aside. Judgment is hereby rendered in favor of plaintiff, Jarrell Morgan, and against defendants, Harry S. Gates, Mattie Jones Gates, and Vernon Walter Gates, decreeing that the certain sale by Harry S. Gates as vendor and Mattie Jones Gates and Vernon Walter Gates as vendees, dated October 23, 1979, recorded under Registry No. 282809 of the Conveyance Records of Webster Parish, Louisiana in Conveyance Book 527, Page 60, conveying the following described property, to-wit:
Lots 236, 237 and 238, Palmetto Beach Estates Subdivision, together with all buildings and improvements thereon, located in Webster Parish, Louisiana, and recorded under Registry No. 252868 of the Conveyance and Mortgage Records of Webster Parish, Louisiana, is hereby annulled insofar and only insofar as it affects the rights of the plaintiff under that certain judgment rendered by the Twenty-Sixth Judicial District Court for Webster Parish, Louisiana in suit No. 38,597 in favor of plaintiff against Harry S. Gates and Rubert Gates in the amount of $10,000 plus interest, attorney fees, and costs; and decreeing that said property is subject to execution under said judgment, provided, however, that out of the proceeds of a sale of said property under execution the defendants, Mattie Jones Gates and Vernon Walter Gates shall be entitled to receive the sum of $5,000 as reimbursement of the consideration paid by them for said sale in preference and priority to the rights of plaintiff under his said judgment. All costs of these proceedings are assessed to the defendants, Harry S. Gates, Mattie Jones Gates, and Vernon Walter Gates, in solido.
Reversed and rendered.