BOUTALL, Judge.
This case arises from a revocatory action brought to set aside two sales of real property. From a judgment annulling the transfers, the defendants appeal.
The Jefferson Bank and Trust Company (Bank) filed suit on a promissory note against Alton Fabre, Sr. on May 16, 1980. Judgment was rendered on May 13, 1981 in the Bank’s favor for the balance owing on the note, $23,992.40, plus 15% interest and 20% attorney’s fees on the amount and interest.
The plaintiff sold to his father, Sidney Fabre, three parcels of property on January 22, 1981, and four parcels on April 27, 1981. On November 18, 1981, the Bank filed suit to have the transfers declared simulations, or to be revoked as fraudulent transfers. The petition alleged, inter alia, that no part of the price was paid, even though the price recited in the acts was grossly below market value of the property; that the transfers were made with intent to defraud by putting the property beyond the reach of Alton Fabre’s creditors; that Alton Fabre, Sr. is insolvent; and that Sidney Fabre knew of his son’s insolvency or threatened insolvency and acquiesced to assist his son. The trial judge found in favor of the plaintiffs, annulled the sales insofar as they affect the rights of the Bank under its prior judgment, and decreed the property to be subject to execution under that judgment. This appeal followed.
The Louisiana Civil Code authority for the revocatory action is found in articles 1968, et seq. The prerequisites for the rev-ocatory action are, in summary: insolvency of the debtor, injury to the creditor, intent to defraud the creditor, and preexisting and accrued indebtedness. Morgan v. Gates, 396 So.2d 1386 (La.App. 2d Cir.1981); Bedding v. Rupp, 375 So.2d 761 (La.App. 4th Cir.1979), writ denied 378 So.2d 437 (La. 1979); Perigoni v. McNiece, 307 So.2d 407 (La.App. 4th Cir.1975); National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App.2d Cir.1967).
The sole issue before this court is a factual question, whether or not the trial judge erroneously found Alton Fabre to be insolvent at the time the sales took place. LSA-C.C. art. 1985 defines insolvency as follows:
“By being in insolvent circumstances is meant, that the whole property and cred *879 its are not equal in amount, at a fair appraisement, to the debts due by the party. And if he, who alleges the insolvency shows the amount of debts, it is incumbent on the other party to show property to an equal or greater amount. To prove the state of his affairs at the period of the contract, the debtor may, at the option of the plaintiff, be examined as a witness in the action for annulling the contract.”
The court, in its reasons for judgment, found that the evidence was convincing as to Alton Fabre’s insolvency, in that he had debts of more than $200,000 in January and April, 1981. It said, further, that:
“... his only assets consisted of land in Mississippi, cattle in Mississippi and certain litigious rights. The value of litigious rights is speculative and uncertain, and can not be considered by the Court. As to the cattle in Mississippi, Fabre testified that they were diseased accordingly, the Court does not consider them as having any value. The value of the property in Mississippi was not established to any certainty by the testimony of Fabre; however, on his financial statement dated September 30, 1979, he lists farm land, building and equipment at $170,283. Fa-bre further testified that the land in Mississippi was mortgaged.”
Sidney Fabre, Alton Fabre’s 82-year-old father, testified that the January sale of three parcels of property for $5,000 took place because Alton needed money to feed his cattle. Mr. Fabre said that Alton was indebted to him for more than $40,000 and sold the second group of properties to him in April to wipe out $40,000 of the debt with the agreement that Mr. Fabre would assume the balance of $19,248 due on a $60,000 mortgage held by the Colonial Bank.
Counsel for the defendants stipulated that Alton was insolvent when both sales took place, except for his interest in pending lawsuits, some farm land in Mississippi, and some cattle. Alton testified that he had not had the farm land professionally appraised but thought that property in the vicinity was selling for $1500 per acre, making his 200 acres worth $300,000. Upon cross examination he admitted that the Mississippi property was mortgaged. Alton’s financial statements of May 31, 1979 and September 30, 1979 were stipulated by the parties as being compiled from information submitted by himself. They indicated a value of $170,283 for the farm land, buildings, and equipment. The defendants’ counsel acknowledged that there was “some question as to value” of the cattle, as the herd was infected with Bang’s Disease. As to Alton’s debts, in addition to the $40,000-plus owed to his father, and the note which is the subject of the instant suit, two judgments were stipulated in the record. Guaranty Bank and Trust Company sued Alton Fabre and Sidney Fabre & Son Seafood Company, Inc. on September 23, 1980 and took a default judgment on October 21, 1980. First National Bank of Jefferson Parish took judgment against Alton Fabre for $170,000, plus legal interest from April 6, 1978 until paid, on May 29, 1981.
While Alton attempted to convince the court that the land in Mississippi was worth more than his financial statements showed, he testified that his interest in the land transferred to his father was worth far less than the $228,000 shown on the financial statements, and that the consideration he received was appropriate. Some of the land, he said was only marshes and lakes, selling for “$50 a mile.”
The defendants’ brief proposes as an asset Alton Fabre’s expectation of inheriting considerable wealth from his father in the future. Just as the value of Alton’s interest in pending lawsuits is speculative when judgment has not been rendered, the value of his father’s estate is speculative, when his father is as yet alive. Neither can be considered assets that would relieve Alton of the designation of insolvency.
The remedy accorded to the plaintiff in a revocatory action, where the transferor intended to defraud but the transferee did not is specified in LSA-C.C.1981, as follows:
“If the contract be onerous, but made in fraud on the part of the debtor, but in *880 good faith on the part of the person with whom he contracted, if the value of the property transferred by such contract exceed by one-fifth the price or consideration given for it, the creditors may annul the contract, and take back the property on paying the price or the value of the consideration with interest, but in this case they shall not receive the fruits.”
See also Morgan v. Gates, supra. The trial judge found and the record bears out that Sidney Fabre did not intend to defraud other creditors. He testified that he was unaware of the true value of the properties transferred and that he was unaware of the insolvency of his son. As other creditors did not intervene in the revocatory action, the judgment correctly applies the provisions of article 1981 only insofar as the creditor’s rights of Jefferson Bank and Trust are affected. Martin Lebreton Insurance Agency v. Phillips, 364 So.2d 1032 (La. 1978).
As the record supports the trial judge’s findings of fact and application of the law, the judgment appealed from is affirmed.
AFFIRMED.