464 So.2d 802 (1985)
FARLEE DRUG CENTER, INC.
v.
BELLE MEADE PHARMACY, INC.
No. 84-CA-249.
Court of Appeal of Louisiana, Fifth Circuit.
February 11, 1985.
*803 Duplechin & Associates, Jack A. Quarles, Gretna, for plaintiff-appellee.
Stephen J. Hornyak, Gretna, for defendant-appellant.
Before BOUTALL, CHEHARDY and DUFRESNE, JJ.
CHEHARDY, Judge.
Farlee Drug Center, Inc., sued Belle Meade Pharmacy, Inc., on open account for $14,171.53 plus interest and attorney's fees, claiming defendant failed to pay for pharmaceutical supplies purchased from Farlee during 1979 and 1980. Judgment was rendered in favor of plaintiff and defendant appealed.
Although plaintiff obtained judgment on the account in the amount prayed, the trial judge denied attorney's fees because he found plaintiff had failed to comply with the requirements of LSA-R.S. 9:2781, Paragraphs A and B (i.e., written demand correctly setting forth the amount owed, accompanied by a copy of the invoices in support thereof, and due diligence in attempting delivery of the written demand). Because plaintiff has neither appealed nor answered the appeal, the district court's refusal to award attorney's fees is final. LSA-C.C.P. art. 2133.
On appeal, defendant assigns the following errors:
(1) That the trial court erred in admitting evidence of the purchases and payments for the years 1975 through 1978, when the transactions sued upon took place in 1979 and 1980;
(2) That the plaintiff failed to establish properly the balance existing in December 1976, to which defendant's 1977 payments were applied;
(3) That the court erred in concluding that defendant's payments were made on the general account rather than being intended to pay for specific invoices;
(4) That the court erroneously found that the payments made by defendant interrupted *804 prescription on the balance of the account for the years prior to 1979; and
(5) That the court erroneously concluded that defendant's payments from January through October 1979 were properly applied only to pay the balance forwarded from 1978 rather than to pay the account in full.
The problems in this case arise from the plaintiff's unorthodox method of bookkeeping. The business relationship between Stuart Farber, the owner of Farlee Drug Center, Inc., and Joseph Henry, the owner of Belle Meade Pharmacy, Inc., arose from their prior friendship. Henry had been employed by Farlee as a pharmacist before he started his own business in 1974. After Henry opened up Belle Meade Pharmacy, Farber agreed to sell him pharmaceutical supplies and other drugstore items at Farlee's cost. Although Farlee customarily did business on a cash basis, Farber allowed Henry to make purchases on credit.
Henry or one of his employees would come to Farlee several times a week to pick up supplies. A Farlee employee would list the items on a printed padded receipt form, without listing the prices. The Belle Meade employee would be given the merchandise together with the original, unpriced receipt. Farlee would retain the carbon copy; later a Farlee employee, usually Mrs. Flo Terrebonne, the bookkeeper, would check Farlee's cost on the items and list those prices on the carbon of the receipt. Occasionally Belle Meade supplied merchandise to Farlee; these items would be listed on the receipt forms as credits to Belle Meade's account.
These padded receipt forms constituted Farlee's entire record of Belle Meade's account; no traditional ledgers or other books were kept. No periodic written statements of account were rendered to Belle Meade. Early in the relationship Joe Henry would be advised by telephone of the amounts of the invoices once they had been "priced out." Eventually he requested that they just send him the priced-out copy. Farlee developed the custom of sending Belle Meade the priced-out copy after each invoice had been paid in full. Once the priced-out copy had been sent to Belle Meade, Farlee had no further record of those purchases.
Mrs. Terrebonne did, however, keep a make-shift ledger sheet of Belle Meade's monthly total purchases and payments, by recording these on a separate receipt form, in roughly chronological order.
Stuart Farber testified that in the early months of the business relationship Henry would pay for the invoices a week or two after they were incurred. A few months later he began paying in full for a set of invoices at a time, once a month. Eventually he simply began to pay a round figure every month on his account, usually $1,000 or $1,500.
When payments were made, Farlee applied them toward the oldest purchases. When Henry made round-figure payments on the account, they were applied toward the "running balance." Farber stated that whenever a batch of invoices was paid in full, then the priced-out invoices were turned over to Henry.
According to Farber, every now and then he insisted that Henry pay a batch of invoices in full. In mid-1978, Farber said, Henry began to miss the monthly payments here and there, sometimes letting several months go by without a payment. Henry would make another $1,000 or $1,500 payment, then miss a month or two again. Yet Belle Meade continued making purchases. Because of this, Farber said, Belle Meade's account gradually fell further and further in arrears.
Farber testified that by December 31, 1978, Belle Meade's balance was $10,670.50. During 1979, Henry made six payments that totalled $10,670.50. The final payment in 1979 was made on October 26 and cleared out the 1978 balance, said Farber, at which point the 1978 invoices were turned over to Henry. Meanwhile, the total of Belle Meade's purchases during 1979 was $13,852.45. Farber still had the carbons of the 1979 and 1980 invoices because those particular invoices had not been paid.
*805 Henry made one payment in 1980, on January 16, in the amount of $1,500. Belle Meade's purchases in 1980, from January through September, totalled $1,819.08. No further purchases or payments were made thereafter. Thus, according to Farlee's records, Belle Meade's final outstanding balance was $14,171.53, comprising the 1979 balance of $13,852.45 plus the 1980 balance of $1,819.08, less the 1980 payment of $1,500.
Farber and Terrebonne each testified that Henry was orally advised from time to time of his outstanding balance, both during the active business relationship and after it ended. He never protested Farlee's bookkeeping methods, or the way in which his account was handled, or the amounts they stated were due. Flo Terrebonne stated that once or twice Henry did ask her for a written statement of account, and that she sent them to him accordingly. She had not kept copies of these statements.
At trial and on appeal, Belle Meade argues that the account was current as of December 31, 1978 and that the payments made in 1979 were intended by Henry to apply to the 1979 purchases. Conceding that the amount of the 1979 purchases exceeded the 1979 payments, just as the amount of the 1980 purchases exceeded the 1980 payments, Belle Meade contends that at most it owes Farlee $3,500.73.
Farlee's evidence of the debits and credits to Belle Meade's account began with an outstanding balance in November 1976 of $7,718.18, as recorded on Mrs. Terrebonne's makeshift "ledger." Farlee no longer had copies of any invoices prior to 1979 (Farlee's priced-out carbon copies for earlier years had been given to Belle Meade, as mentioned above). The invoices entered into evidence at trial were copies obtained from Belle Meade during pretrial discovery. No invoices earlier than 1976 were available from either party, and for 1976 there were only $4,679.99 in invoices.[*]
Also placed in evidence were copies of Belle Meade's payment checks to Farlee for the years 1975, 1977, 1978, 1979 and 1980. There were no checks for 1976.
Belle Meade's primary contention on appeal is that no evidence of any transaction prior to 1979 should have been admitted because those items were subject to the three-year prescription applicable to open accounts. LSA-C.C. art. 3538 (repealed by Acts 1983, No. 173, eff. Jan. 1, 1984, replaced by art. 3494, eff. Jan. 1, 1984). According to Belle Meade, the only debits to its account that may be considered in applying the payments are those made after December 30, 1978.
Payment on an open account, however, constitutes an acknowledgement of the debt, thus interrupting prescription, except where the payments are designated to pay particular invoices. LSA-C.C. arts. 3520 (repealed), 3538 (repealed); LSA-C.C. arts. 3464 (eff. Jan. 1, 1984), 3466 (eff. Jan. 1, 1984); Gulfcoast Newspapers, Inc. v. Cart, 331 So.2d 177 (La.App. 3 Cir.1976); Freiberg v. Rembert, 213 So.2d 104 (La. App. 1 Cir.1968).
Prescription is not applicable here. The only debts made the basis of this suit arose in 1979 and 1980, well within the three-year prescriptive period. Further, at no time in the history of Belle Meade's account prior to the filing of the lawsuit did *806 three years pass without a payment being made on the general account.
Belle Meade's argument that its payments were intended to be applied to specific invoices has no basis in the evidence. Of the 28 payment checks issued between January 13, 1977 and January 16, 1980, all except three were in round figures. The three checks written in specific dollar-and-cents amounts were, from the evidence, intended by Belle Meade and applied by Farlee to pay off particular batches of invoices designated by Farleethe oldest invoices. Except for the final check, however, these exact-figure payments were followed by payments on the general account. Thus prescription never accrued.
Evidence of the pre-1979 debts was properly introduced in order to establish the manner in which Farlee imputed the payments. In the absence of a designation by debtor or creditor, payments made on account are imputed to those which the debtor had the most interest in discharging; if there are several of the same nature, the payments are applied to the oldest. LSA-C.C. art. 2166; Carter's Ins. Agency, Inc. v. Franklin, 428 So.2d 808 (La.App. 1 Cir.1982). The evidence clearly establishes Farlee's practice of imputing the payments to the oldest debts.
However, Farlee began its evidence with a 1976 end-of-year balance in the amount of $8,068.08, supported by only $4,679.99 in invoices. Farlee points out that the first four payments by Belle Meade during 1977 totalled $8,000, while Belle Meade's purchases for the same period were only $3,398.73. Farlee argues,
"Further, if one subtracts the $8,000.00 paid in the first four months of 1977 from the balance of $8,068.68, the sum remaining is $68.08. When this sum is added to the $2,502.60 in net purchases made by Belle Meade during the period January-March, 1977, then the balance that would have been owed to Farlee as of April, 1977, was $2,570.68. This is the exact amount paid by Belle Meade to Farlee in May and June of 1977."
Farlee contends this establishes the correctness of the 1977 beginning balance.
The plaintiff in an action on open account bears the burden of proving his case by a preponderance of the evidence. Texas Industries, Inc. v. Roach, 426 So.2d 315 (La.App. 2 Cir.1983); Freiberg v. Rembert, supra. The demand need not be rejected merely because plaintiff's accounting practices do not conform to the highest standards or use the best methods. Texas Industries, Inc. v. Roach, supra. The amount of an account is a question of fact on which the trial judge's findings may not be disturbed absent manifest error. Texas Industries, Inc. v. Roach, supra.
We find no merit to Belle Meade's contention that Farlee failed to prove delivery of the items shown on the invoices in evidence. Belle Meade has not specifically denied delivery or presented proof of a lack of delivery. Once a prima facie case has been established by a plaintiff-creditor in a suit on an open account, the burden of proof shifts to the debtor to disprove the existence or correctness of the account. Cardinal Wholesale v. Rainbow Floor Covering, 432 So.2d 419, 421 (La. App. 1 Cir.1983). Similarly, Belle Meade has not proved its claim that Farlee failed to give it credit for items Belle Meade returned or supplied to Farlee.
Finally, Belle Meade asserts that the final 1979 payment paid up all purchases made through that date because of a receipt from Mrs. Terrebonne marked "Paid in Full." Mrs. Terrebonne's testimony, however, as well as the receipt itself, clearly establish that the "Paid in Full" notation applied to the existing balance from 1978.
For the foregoing reasons, we affirm the judgment of the district court. Costs of this appeal are assessed against Belle Meade Pharmacy, Inc.
AFFIRMED.
NOTES
[*] We note that although copies of the 1976, 1977 and 1978 invoices were filed into evidence, those copies are missing from the record on appeal. Apparently they have been lost or misplaced; a notation by the district court appeal clerk indicates these exhibits were missing from the clerk's office at the time the appellate record was prepared.

Where the record on appeal is deficient, it must be assumed that the evidence submitted or stipulated supported the result reached by the trial court. Field v. Merritt, 449 So.2d 7 (La. App. 1 Cir.1984), writ denied 450 So.2d 964. Judgments of the trial court are presumed correct on appeal and items of evidence missing from the record are presumed to support the trial court's judgment. United Pentecostal Church v. Interstate Surplus, 368 So.2d 1104 (La.App. 2 Cir.1979). Accordingly, we assume that the figures shown on the makeshift ledger sheets were supported by the missing exhibits (with the exception of part of the 1976 ledger balance).