467 So.2d 1344 (1985)
Patsy G. COPHER, Wife of/and Bill W. Kuhn, Jr.
v.
ORMOND BUILDERS, INC. and L. Cambre Enterprises, Inc.
Nos. 84-CA-355, 84-CA-356.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
*1345 A. Patrick Dehon, Jr., New Orleans, for plaintiffs-appellees.
R. Ray Orrill, Jr., Orrill & Avery, New Orleans, Anthony V. Ligi, Jr., Hansen & Ligi, Metairie, for defendants-appellants.
Before BOWES, GAUDIN and DUFRESNE, JJ.
BOWES, Judge.
The present case has been appealed by Louis Cambre Enterprises, Inc. and Ormond Builders, Inc., from a judgment of the District Court decreeing the sale of certain unimproved real estate property by one defendant to the other to be null and void, and declaring the property subject to execution under a previous judgment on behalf of plaintiffs; providing, however, that Cambre would be entitled to $19,863.17 reimbursement from the proceeds of any sale of the property. The judgment further dismissed defendants' reconventional demand.
On November 5, 1981, plaintiffs herein had filed suit against Ormond Builders, Inc., alleging failure to correct certain deficiencies in the home, which they purchased from Ormond. (This is not the same property that was sold as referred to above). Although we were unable to find a copy of the judgment, the record states (and defendants agree) that a default judgment against Ormond in the amount of $9,989.00, plus legal interest, was entered in that case on October 26, 1982. Between the time suit was filed and judgment rendered, defendant Ormond sold to L. Cambre Enterprises, on June 23, 1982, real estate property for the sum of $32,000.00. In February, 1983, the Kuhns filed a petition to have the sale set aside as a simulation, or, alternatively, they sought to have the sale revoked as a fraud on plaintiffs, creditors of Ormond, Inc. Defendants reconvened, alleging that the Kuhns had filed a Notice of Lis Pendens against the property in question, that they (Kuhns) had no real interest in the property as a general judgment creditor of Ormond Builders, Inc., and that Cambre Enterprises had been unable to market the property due to the Lis Pendens. After trial on the merits, the court rendered judgment in favor of plaintiffs, annulling the sale.
At trial, it was established that Louis Cambre was president of, and owned 50% *1346 of the stock in, Ormond Builders. His brother Walter owned the other 50% of the stock. Louis Cambre is also president and 50% stockholder in L. Cambre Enterprises, Inc. (Mrs. Cambre owns the remaining stock in that corporation). At the time of the June 23rd sale, Ormond had no other assets whatsoever.
Over a period of time, L. Cambre Enterprises claimed to have paid a number of debts on behalf of Ormond: there were several payments made by Cambre, on Ormond's loans, with Carruth Mortgage Company and American Bank on the subject property, a payment on some business invoices of $1,500.00; and a payment of wages of $1,000.00. Cambre personally paid one payment to Carruth; he also claimed wages due from Ormond in the amount of $4,506.77, and finally claimed a loan of $5,000.00 to Ormond, which was used as a down payment at the time the lot was originally purchased in March of 1980.
On appeal, appellants have urged that the trial court committed error in that appellees were not creditors of Ormond Builders at the time of the sale in question; that appellees were not injured by the sale of the property; and that appellees failed to prove intent to defraud. Appellants further allege that it was error to dismiss its reconventional demand.
The Second Circuit, in Morgan v. Gates, 396 So.2d 1386 (La.App. 2nd Cir. 1981), discussed the rules governing revocatory actions, and the proof requirements of such:
The revocatory action is an action which the law grants to every creditor to annul any contract made in fraud of his rights. LSA-C.C. Art. 1970. In order to exercise this action, it must be established that the debtor does not have property sufficient to satisfy the debt of the complaining creditor. LSA-C.C. Art. 1971. Additionally, the complaining creditor must obtain a judgment against his debtor which liquidates the debt owed. LSA-C.C. Art. 1972.
The following articles impose additional proof requirements on the creditor bringing the revocatory action:
LSA-C.C. Art. 1978:
"No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury."
LSA-C.C. Art. 1979:
"If the contract be onerous, and the original debtor made it with intent to defraud his creditors, but the person, with whom he contracted, was in good faith, the contract can not be annulled, except under the circumstances and in the manner hereinafter provided."
The prerequisites for the revocatory action have been summarized as follows: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor; and (4) preexisting and accrued indebtedness. Redding v. Rupp, 375 So.2d 761 (La.App. 4th Cir.1979), writ denied 378 So.2d 437 (La.1979); Perigoni v. McNiece, 307 So.2d 407 (La.App. 4th Cir.1975); National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La. App.2d Cir.1967).
Appellants' argument that plaintiffs were not creditors of the defendant Ormond, a necessary prerequisite to bringing a revocatory action, is without merit. Defendant essentially states that the claim of plaintiffs in the contract action had not been reduced to judgment at the time of the sale, and, therefore, plaintiff-appellants cannot be regarded as creditors, as contemplated by article 1970. We disagree. Rather, we find persuasive the reasoning of the court in Babbs v. Fernandez, 130 So.2d 436 (La.App. 4th Cir.1961), in which the Fourth Circuit said:
The Rachal case involved an action in tort and a sale which was sought to be revoked. It became material for the *1347 court to decide whether the codal articles dealing with simulation or the revocatory action were applicable and the sale was revoked as a simulation. Contrary to the instant case the conveyance in Rachal had been made before judgment and before judicial demand. The statement referred to is obiter dicta and contrary to Holland v. Gross, La.App., 195 So. 828, which squarely holds that a judgment is not a "debt" in the strict sense of the word as used in the articles governing avoidance of contracts in fraud of creditors, but is merely the recognition of the pre-existence of a debt or obligation and that under these articles the creditor-debtor relationship arises immediately upon the commission of the tort. Holland stands for the proposition that a fraudulent conveyance made subsequent to the commission of the tort and prior to judicial demand may be set aside by the revocatory action. Even in tort the law is now well settled that a fraudulent sale made subsequent to judicial demand but prior to judgment may be set aside by the revocatory action. Ventrilla v. Tortorice, 160 La. 516, 107 So. 390. The latter is the case here, for the donation was not made until three days after judicial demand. In addition, the instant case is one which arises out of contract and not tort. The codal articles refer to simply "creditor" and nowhere do they require that the plaintiff be a judgment creditor. This is made clear by the fact that LSA-Civil Code, Art. 1975 provides that the revocatory action may be instituted in the same action in which the debt against the transferor is reduced to judgment. Rendition of a judgment against the transferor is not a pre-requisite to the institution of the revocatory action.
We conclude, then, as did the trial judge, that the judgment obtained by the Kuhns was not, in itself, the debt, but merely the recognition of a pre-existing and accrued indebtedness due them by Ormond, in contract, thus making them creditors at the time of the act of sale. We see no reason to exclude a creditor's claim arising out of contract any more than one from tort (as urged by appellee) or other origin as long as the creditor has suffered an economic "injury" and is being prejudiced by the debtor's action.
Other courts have come to the same conclusion (see Babbs v. Fernandez, supra). Rownd v. Davidson, 113 La. 1047, 37 So. 965 (1905), cited by appellant, is obiter dicta rather than jurisprudential precedent, and has not been followed in subsequent decisions.
Even though appellees are, then, creditors of appellants, it is still necessary to determine whether the other three requirements are met in the present case.
Louis Cambre testified on the number and amounts of monies which he either loaned to Ormond, or which he paid directly to other creditors on behalf of Ormond. He also testified that upon completion of the sale, the net proceeds of $7,136.83 were deposited into his checking accounts$6,500.00 was deposited into the L. Cambre Enterprises, Inc. account and the remainder into Cambre's personal account. Under LSA C.C. Art. 2658, an insolvent debtor is forbidden to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due. Such dation amounts to constructive fraud. C.C. 1969; Morgan v. Gates supra. We are, therefore, compelled to conclude that the transaction was a dation en paiement from Ormond to Cambre in preference and to the prejudice of the Kuhns and with prejudice of the Kuhns and with intent to defraud them.
That Ormond was insolvent is undisputed, and Cambre admitted that Ormond's debts far exceeded its assets as of the time of the sale. Insolvency alone, however, is an insufficient basis for revoking a dation en paiement. The law requires prejudice, or injury, to the complaining creditor. LSA C.C. Arts. 1978, 2658; Martin LeBreton Insurance Agency v. Phillips, 364 So.2d 1032 (La.1978).
The test for determining prejudice is a factual one, based on the value of the *1348 property and the ranking of the indebtedness. Martin LeBreton, supra.

We must examine the secured debts on the subject property in order to determine prejudice to the plaintiff. All debts secured by the property prime all ordinary creditors, as well as any debts given preferential ranking by other statute (such as materialman's liens and privileges).
According to the record, the only secured indebtedness on the property in question was the first mortgage, in the amount of $18,786.25. That amount, along with closing costs and payment of past-due property taxes, was properly ordered by the trial judge to be reimbursed to defendants upon sale of the property.
We agree with defendants, however, that Louis Cambre and Cambre Enterprises should be permitted additional reimbursement for all payments made on behalf of Ormond which represent interest payments on the mortgage on the land. Cambre had loaned Ormond $5,000.00, which he (Cambre) testified was used as a down payment on the original acquisition. Subsequently, he made several payments to Carruth on the mortgage, obviously to prevent foreclosure proceedings. Under C.C. Article 2161(1),[1] Cambre is entitled to be subrogated to the rights of Carruth, in the amount of payments made. In effect, insofar as these payments are concerned, Cambre has the same secured rights as Carruth and these payments are of a higher ranking than that of a general creditor.
As far as can be determined from the record, the Carruth mortgage was the only mortgage secured by the property. A payment made to American Bank in the amount of $2,660.96 appears to be on a general commercial loan to Ormond, not secured by the property in question, and therefore will not be given secured status.
Of the cancelled checks produced at trial, the following amounts will be allowed as reimbursement in addition to the amount granted by the trial court:

Check # 819 $546.88
Check # 721 550.24
Check # 629 598.75
Check # 506 679.75

These checks represent payments to Carruth discussed above. With reference to Check # 138 in the amount of $1,143.14, the record shows that $693.25 of that amount was for the subject property, and so will be allowed secured status. That is a total of $3,068.87 to be reimbursed to Cambre, in addition to the $19,863.17 granted by the trial court, or a grand total of $22,932.04.
Considering the amount due to Cambre and the sale price of the property, we conclude that plaintiff was injured by the dation in question, and the transaction was properly revoked by the trial judge. Indeed, it is apparent from his reasons for judgment that, although not cited therein, he followed the same jurisprudence that we have in this opinion.
The wage claim of defendant in the amount of $4,506.77 was not supported by the evidence. The business records of Ormond were conspicuous by their absence, and, while such records might have supported the remaining claims of Ormond, the fact is they were not produced at trial. The wages claimed were not shown to have been incurred in connection with the lot. Similarly, the payments made by Cambre of $1,000.00 for "wages" and $1,500 for building supplies were not shown at trial to have been incurred in connection with the subject lot. Indeed, it was shown at trial that the lot was unimproved and therefore the materials in question could not have been purchased for that property. Ormond Builders obviously had other properties on which it worked, including that of plaintiffs. Therefore, we are unable to accord *1349 these debts a privileged status, as enunciated in C.C. 3249.
The $5,000.00 loaned by Cambre to Ormond for the original purchase of the lot was unsecured and has no discernible privilege. That sum is then included in the list of general debts of Ormond Builders. Except as indicated above, relative to interest payments to Carruth, Cambre is a general creditor of Ormond, as are plaintiffs.
Finally, we find that the trial judge properly dismissed defendants' reconventional demand. A revocatory action concerning the sale of particular property obviously affects the title to that property. The purpose of a notice of lis pendens is to give effective notice to third persons of pending litigation affecting title to real property. C.C.P. art. 3751; Karst v. Fryar, 430 So.2d 318 (La.App. 3rd Cir. 1983).
Accordingly, the judgment of the trial court decreeing the sale of property from Ormond Builders, Inc. to L. Cambre Enterprises, Inc., to be null and void as it affects the rights of plaintiffs is affirmed; the property is subject to execution under judgment rendered in the 24th Judicial District Court, Case # 260-136, in the amount of $9,989.00, plus legal interest.
That part of the judgment allowing L. Cambre Enterprises reimbursement in the amount of $19,863.17 is amended to reflect additional credits of $3,068.87, for a total reimbursement due of $22,932.04.
That portion of the judgment dismissing defendants' reconventional demand is affirmed. Costs are taxed to defendants/appellants.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Art. 2161. Legal subrogation

Art. 2161. Subrogation takes place of right:
1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.