United States Court of Appeals,

Fifth Circuit.

No. 96-30372.

Cynthia Lee TRAINA, Trustee, Appellant,

v.

WHITNEY NATIONAL BANK, Appellee.

April 8, 1997.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before HIGGINBOTHAM, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Trustee Cynthia Traina appeals the dismissal of her complaint seeking to avoid transfers between bankruptcy debtor Imperial Jewelry Corporation (Imperial) and Whitney National Bank (Whitney). Because we conclude that the trustee fails to satisfy the elements necessary to bring a revocatory action under Louisiana law, we affirm.

I.

On May 30, 1991, Imperial executed a security agreement that gave Whitney a security interest in all of Imperial's inventory, accounts receivable, and deposit accounts. The borrower in connection with this agreement was not Imperial, however, but Russell Aronson, Imperial's owner, who owed the bank a substantial amount of money. From February 20, 1990, to January 5, 1993, Imperial paid $134,043.92 to Whitney in connection with Aronson's debt. On January 4, 1993, Imperial transferred to the bank all of its inventory and accounts receivable; in return, Aronson received

1

a $25,000 credit on his debt. After January 4, 1993, Whitney was paid $17,628.68 by account debtors of Imperial, which further reduced Aronson's debt. On January 5, 1993, Imperial filed a chapter 7 petition.

Before February 20, 1990, and through the date of filing, Imperial had two revolving credit accounts with First Bankcard Center that allowed Imperial to incur debt on an ongoing basis. One account had a balance of $245.17 as of May 28, 1991, the statement date immediately prior to the security agreement. The June 27, 1991, statement shows that Imperial had paid $245.17 and incurred additional charges of $466.63. The second account reported a balance of $1,424.30 as of the May 13, 1991, statement date; additional charges of $111.05 were incurred between May 13, 1991, and May 30, 1991, the date of the security agreement. By October 7, 1991, Imperial had paid in full all sums due for purchases made before May 30, 1991. While the pre-security agreement debt had been paid off, however, Imperial still maintained outstanding balances on both accounts. First Bankcard filed a Proof of Claim in this case for $6,267.74.

The trustee seeks to avoid the security agreement between Imperial and Whitney, the payments from Imperial to the bank, and the transfer of Imperial's inventory and accounts receivable to the bank by pursuing a revocatory action on First Bankcard's behalf. The bankruptcy court found no statutory basis for avoiding the agreement, and the district court affirmed. The trustee appeals that decision.

II.

A.

This court reviews a bankruptcy court's conclusions of law *de novo* and findings of fact for clear error. *In re Kemp,* 52 F.3d 546, 550 (5th Cir.1995). When the district court has affirmed the bankruptcy court's findings, the review for clear error is strict. *Id.*

B.

Under § 544(b) of the Bankruptcy Code, a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim...." 11 U.S.C. § 544(b). Here, the "applicable law" at issue is the Louisiana revocatory action, as codified in Louisiana Civil Code Art. 2036, which provides:

> An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency.

Thus, under Louisiana and federal bankruptcy law, the trustee may avoid Imperial's transfers to the bank by stepping into the shoes of an unsecured creditor who could have avoided those transfers by means of a revocatory action.[1]

Before the Louisiana Civil Code was revised in 1984, a creditor pursuing a revocatory action had to demonstrate: (1)

---

[1]Both parties agree that First Bankcard is the only unsecured creditor that could arguably bring a revocatory action under Louisiana law.

3

insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor by the transaction; and (4) pre-existing and accrued indebtedness. *Central Bank v. Simmons,* 595 So.2d 363, 365 (La.App. 2d Cir.1992). In amending the articles relating to revocatory actions, the Louisiana Legislature replaced the fraud requirement with an objective test of whether the act caused or increased the obligor's insolvency. LSA-C.C. Art. 2036 cmts. (a) & (b); *Succession of Neuhauser,* 579 So.2d 437, 441 (La.1991). More generally, the question is whether "prejudice to the obligee's right has been caused by the obligor's act." *Exposé des Motifs of the Projet of Titles III and IV of Book III of the Civil Code of Louisiana,* Introductory Note from the Reporter of the Obligations Committee of the Louisiana State Law Institute, La. Civ.Code Ann. Vol. 7-8 at 64 (West 1987).

A creditor seeking to avoid a transfer now must prove that the offending transaction: (1) was made or effected after the right of the obligee arose and (2) caused or increased the obligor's insolvency. LSA-CC Art. 2036 & cmts. (a) & (f); *Simmons,* 595 So.2d at 365. The bankruptcy court determined that Imperial's grant of a security interest to Whitney increased its insolvency. However, the court concluded that the anteriority element—that is, the requirement that the offending act be "made or effected after the right of the obligee arose"—was missing because all of the debt that Whitney incurred prior to the offending security agreement had been paid off. According to Louisiana Civil Code articles governing imputation of payment, Imperial's payments to First

4

Bankcard were applied to debts that first became due and to accrued interest.[2] The bankruptcy court, after reviewing the evidence, found that Imperial had paid off all of the debt it incurred before the signing of the security agreement. While Imperial maintained outstanding, unpaid balances under both credit agreements through the date of bankruptcy filing, the only debt remaining at the time of bankruptcy accrued *after* the security agreement was signed. Because First Bankcard was not prejudiced by the security agreement with respect to debt accrued after the transfer, the court concluded that the debt existing at the time of bankruptcy could not support a revocatory action.

The trustee argues that First Bankcard's right as obligee arose not when Imperial incurred separate and discrete debts, but rather when Imperial and First Bankcard first entered into the credit agreements requiring Imperial to pay all debts incurred under those agreements and allowing Imperial to incur debt without entering into new contracts. This court must determine whether First Bankcard's right was created as of the date the credit card contracts were entered into or, as the lower courts found, as of the date that the debt accrued.

_____

[2]Article 1868 of the Civil Code provides that "[i]f the obligor had the same interest in paying all debts, payment must be imputed to the debt that became due first." LSA-CC Art. 1868; *see Farlee Drug Center, Inc. v. Belle Meade Pharmacy, Inc.,* 464 So.2d 802, 806 (La.App. 5th Cir.1985). Additionally, article 1866 of the Civil Code requires that "[a] payment made on principal and interest ... be imputed first to interest." LSA-CC Art. 1866. While Imperial maintained outstanding balances on both accounts, it also made regular payments to First Bankcard that must be imputed first to the pre-security agreement debt.

The Louisiana Civil Code defines obligation as "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee. Performance may consist of giving, doing, or not doing something." LSA-CC Art. 1756. The Code further provides that an obligation may give an obligee the right to "[e]nforce the performance that the obligor is bound to render." LSA-CC Art. 1758. The trustee contends that the credit agreements represent a legal relationship creating an "obligation" that, in turn, gives rise to a "right" as defined by article 2036.

We disagree. The existence of the credit agreements, alone, does not give rise to a "right" necessary to support a Louisiana revocatory action. The Code's definition of "obligation" requires more than the mere existence of a legal relationship; rather, it demands a legal relationship under which "an obligor[ ] is bound to render a performance in favor of another." Here, Imperial was bound to repay any advance of credit obtained under its credit agreements. However, this obligation arose only upon incurrence of debt. No obligation existed until Imperial charged transactions to the individual credit accounts. Because Imperial was not bound to render its performance—payment of debt—until it actually incurred debt, the relationship between Imperial and First Bankcard at the time the credit agreements were entered into did not constitute an "obligation" as defined by the Civil Code. In addition, given that Imperial has paid off the debt existing at the time of the offending security agreement, First Bankcard is unable to

6

demonstrate how it has been prejudiced by that agreement.

Commentary accompanying the revised articles relating to revocatory actions supports our conclusion that an obligee must demonstrate the existence of some debt—liquidated or otherwise—at the time of the offending transfer to maintain a revocatory action. *See Thomassie v. Savoie,* 581 So.2d 1031, 1034 (La.App. 1st Cir.1991) (stating that Legislature's substitution of "obligor" and "obligee" for "debtor" and "creditor" in 1984 revision was intended to expand scope of revocatory action to cover unliquidated claims (citing art. 2041 cmt. (b))). The anteriority element is defined "in accordance with traditional doctrine received by the Louisiana jurisprudence." LSA-CC Art. 2036 cmt. (f). Courts reviewing the anteriority element in pre-revision transactions consistently held that the revocatory action was available only to creditors showing preexisting and accrued indebtedness at the time of the offending transfer. *See, e.g., Copher v. Ormond Builders, Inc.,* 467 So.2d 1344, 1346 (La.App. 5th Cir.1985); *Adams v. Laborde,* 430 So.2d 381, 384 (La.App. 3d Cir.1983); *Morgan v. Gates,* 396 So.2d 1386, 1389 (La.App. 2d Cir.1981). Even after the revision, at least one Louisiana court has continued to require "pre-existing and accrued indebtedness." *See Security Ctr. Protection Servs., Inc. v. All-Pro Security, Inc.,* 650 So.2d 1206, 1214 (La.App. 4th Cir.1995); *see also In re Lenard,* 849 F.2d 974 (5th Cir.1988); Bruce V. Schewe, *Debtors in Solido: On Plain Language and Uncertainty with Mention of the Revocatory Action,* 32 Loyola L. Rev. 13, 41 & n. 128 (1986) (asserting that new article 2036 carries forth the timing

rule of old article 1993, which provided that "[n]o creditor can ... sue individually to annul any contract made before the time his debt accrued"). Finally, comments to article 2036 state that the revised language "changes the law insofar as it abandons the notion of fraud contained in the source articles. Otherwise it reproduces the substance of" those articles. The source articles require the presence of a "debt" owed to the creditor. *See* LSA-CC Arts. 1971, 1972, 1975, 1977 (repealed).

The trustee relies on two bankruptcy court decisions interpreting the law of other jurisdictions to support her claim that a revolving credit agreement can support a revocatory action. *In re Aluminum Mills Corp.,* 132 B.R. 869 (Bankr.N.D.Ill.1991); *In re Structurlite Plastics Corp.,* 193 B.R. 451 (Bankr.S.D.Ohio 1995). Assuming these courts reached the correct result under Illinois and Ohio law, for reasons discussed above, Louisiana law requires a different conclusion.

Because we conclude that the bankruptcy court correctly dismissed the trustee's revocatory action, we need not address Whitney's other arguments.

III.

For these reasons, the district court's decision dismissing Traina's complaint is AFFIRMED.

AFFIRMED.