IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-11250
_____

In The Matter Of: KENNETH WAYNE STERN,

Debtor.

_____

INTERNAL REVENUE SERVICE,

Appellee,

v.

KENNETH WAYNE STERN,

Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
Docket No. 3:98-CV-1002-H
_____

December 16, 1999

Before KING, Chief Judge, and POLITZ and STEWART, Circuit Judges.

PER CURIAM:[*]

Debtor-Appellant Kenneth Wayne Stern appeals from a district court judgment reversing the bankruptcy court's order disallowing a portion of the Internal Revenue Service's claims. The 64`29+87bankruptcy court determined that the IRS was not entitled

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

to equitable tolling under 11 U.S.C. § 105(a) of time limitations within 11 U.S.C. § 523(a)(1)(B)(ii). Because we find that the bankruptcy court did not abuse its discretion in refusing to toll, we reverse the district court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises because Stern failed to timely pay income taxes and also filed numerous bankruptcy petitions. His first Chapter 13 petition was filed on January 11, 1991, and was dismissed on July 31, 1991 because Stern missed several payments. Amounts collected by the bankruptcy trustee were returned under 11 U.S.C. § 1326(a)(2). His second Chapter 13 petition was filed on January 15, 1992. This case was dismissed on December 12, 1992 because Stern's liabilities exceeded the $100,000 maximum specified in 11 U.S.C. § 109(e). On August 24, 1992, while his second Chapter 13 case was ongoing, Stern filed income tax returns for the 1987, 1988, 1989, and 1990 tax years.

The IRS assessed Stern's tax liabilities for 1989 and 1990 on February 22, 1993, and his tax liabilities for 1987 and 1988 on March 29, 1993. Collection efforts began on May 31, 1993, with an agent being assigned in June of that year.

On February 28, 1994, Stern entered an installment agreement with the IRS, under which he was to pay approximately $650 per month. However, Stern stopped making payments after six months. Stern filed a Chapter 7 bankruptcy petition on September 9, 1994.

2

On January 10, 1995, he received a general discharge.  The IRS resumed its collection efforts on June 12, 1995.

In 1996, the IRS filed and later amended a proof of claim for federal income taxes for the years 1987 to 1994.  Stern objected to liabilities for the 1987-1990 period, arguing that these had been discharged on January 10, 1995.  As of the date of his Chapter 7 petition, Stern's returns for the 1987-1990 period had been filed for more than two years, see 11 U.S.C. § 523(a)(1)(B)(ii), taxes had been assessed for more than 240 days, see 11 U.S.C. § 507(a)(8)(A)(ii), and the last date for filing a return without penalty was over three years before.  See 11 U.S.C. § 507(a)(8)(A)(i).

Without tolling of the time limitations in § 507(a)(8), the IRS would lose its priority.  More detrimental to the IRS, without tolling of the two-year limitation in § 523(a)(1)(B)(ii), Stern's tax debt would be discharged.  After an evidentiary hearing, the bankruptcy court held that the IRS was not entitled to equitable tolling under 11 U.S.C. § 105(a) during Stern's prior bankruptcy cases because evidence did not support a finding

3

of bad faith filings.[1]  Therefore, the IRS' claims for the 1987–1990 period were disallowed.

The district court, reversing the bankruptcy court, held in a bench opinion that the equities supported the IRS' position that time restrictions in each of the relevant provisions should be equitably tolled.  The time during which the automatic stay associated with each of Stern's prior two bankruptcies was in effect, as well as an additional six months after each stay was lifted, were not to be counted in determining whether the time limitations of § 523(a)(1)(B)(ii) or § 507(a)(8)(A)(i) had been exceeded.  As a result, tax liabilities for the 1987–1990 period were not discharged in the debtor's previous Chapter 7 bankruptcy.

## II. ANALYSIS

Stern argues that the district court misinterpreted the facts of the case and substituted its own interpretation of those facts for that of the bankruptcy court, and that it improperly

---

[1]  Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

applied our holding in <u>Quenzer v. United States (In re Quenzer)</u>, 19 F.3d 163 (5th Cir. 1993).  For these reasons, he argues, the district court's order should be reversed.

In reviewing the district court's reversal of the bankruptcy court's order, we apply the same standards as are to be applied by the district court.  <u>See</u> <u>Kennard v. MBank Waco, N.A. (In re Kennard)</u>, 970 F.2d 1455 (5th Cir. 1992).  Findings of fact are reviewed under the clearly erroneous standard, and conclusions of law are reviewed de novo.  <u>See</u> <u>Traina v. Whitney Nat'l Bank</u>, 109 F.3d 244, 246 (5th Cir. 1997).  We review the bankruptcy court's determination to employ or not to employ its § 105(a) powers under an abuse of discretion standard.  <u>See</u> <u>In re Coastal Plains, Inc.</u>, 179 F.3d 197, 204 (5th Cir. 1999).  "The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." <u>Koon v. United States</u>, 518 U.S. 81, 100 (1996); <u>see also</u> <u>Coastal Plains</u>, 179 F.3d at 205; <u>Latvian Shipping Co. v. Baltic Shipping Co.</u>, 99 F.3d 690, 692 (5th Cir.1996) ("We will not find an abuse of discretion unless the . . . court's factual findings are clearly erroneous or incorrect legal standards were applied.").

We have noted that "the powers granted by [§ 105(a)] must be exercised in a manner that is consistent with the Bankruptcy Code," <u>Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Management, Inc.)</u>, 4 F.3d 1329, 1334 (5th Cir. 1993), and that the section "does not authorize the bankruptcy courts to create

5

substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." United States v. Sutton, 786 F.2d 1305, 1308 (5th Cir. 1986) (footnote omitted). Within these confines, the section allows courts to issue orders, processes, or judgments they determine are necessary or appropriate to carry out the provisions of the Bankruptcy Code, and to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).

Whether a court should invoke its equitable powers under § 105(a) is a matter of discretion. See Perkins Coie v. Sadkin (In re Sadkin), 36 F.3d 473, 478-79 (5th Cir. 1994) ("Section 105(a) provides equitable powers for the bankruptcy court to use at its discretion."). In Quenzer, we noted that "[e]quitable considerations are largely fact driven" and that "'[t]he essence of equity jurisdiction has been the power . . . to mould each decree to the necessities of the particular case.'" 19 F.3d at 165 (quoting Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944) (Douglas, J.)). Since Quenzer was decided, courts have drawn on this language and have considered the overall facts of the particular case before them in their determinations of whether time limitations within § 507(a)(8) should be tolled. See, e.g., Clark v. IRS (In re Clark), 184 B.R. 728 (Bankr. N.D. Tex. 1995); Miller v. IRS (In re Miller), 199 B.R. 631 (Bankr. S.D. Tex.

6

1996).  At least one court has taken the same approach to its assessment of whether § 105(a) should be used to toll limitations within § 523(a)(1)(B)(ii), a section also at issue here.  See Hollowell v. IRS (In re Hollowell), 222 B.R. 790 (Bankr. N.D. Miss. 1998).  In each of these cases, the court found that the circumstances warranted equitable tolling.

In this case, the bankruptcy court drew a different conclusion: that the facts of the case before it did not warrant use of its equitable powers under § 105(a).  A thorough review of the full record, applicable law, and the bankruptcy court's careful opinion leads us to conclude that it did not abuse its discretion in deciding that the IRS had not met its burden of showing that it was entitled to equitable tolling.  The bankruptcy court did not apply inappropriate legal standards in determining whether to toll the time limitations within § 523(a)(1)(B)(ii).  It clearly assessed a number of different facts before making its determination.  We see no reason to conclude that its findings of fact are clearly erroneous.  The district court apparently viewed the facts differently, and decided that the equities favored the IRS.  This, however, is not sufficient to reverse the bankruptcy court's determination.

As a result, the district court's judgment reversing the bankruptcy court's order is REVERSED, and the bankruptcy court's order is thereby REINSTATED.

7