430 So.2d 381 (1983)
Glynn C. ADAMS, Plaintiff-Appellant,
v.
Lance LABORDE and Elliot Juneau, Defendants-Appellees.
No. 82-795.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
*382 Michael H. Davis, Alexandria, for plaintiff-appellant.
Kim Kidd and Edward J. Milligan, Jr., Lafayette, for defendants-appellees.
Before FORET, CUTRER and DOUCET, JJ.
CUTRER, Judge.
This is an appeal by a creditor from a trial court judgment which dismissed his revocatory action brought against his debtor and the purchaser of the debtor's movable property.
Glynn C. Adams, creditor, filed a revocatory action against Lance Laborde, debtor, and Elliot Juneau, the purchaser of Laborde's pickup truck, seeking to set aside the truck sale on the ground that Laborde sold the truck with the intent to defraud Adams, who had previously obtained a judgment against Laborde. Juneau answered and reconvened for damages. Laborde filed no answer and a preliminary default was entered against him.
After a hearing, the trial judge dismissed Adams' suit and also denied Juneau's reconventional demand. Adams appealed and we reverse.

FACTS
The facts of this case are as follows:
Adams obtained a judgment against Laborde on June 30, 1981, for the sum of $3,171.00. A judgment debtor examination of Laborde was conducted by counsel for Adams on September 14, 1981. The judgment debtor examination revealed that the *383 only property owned by Laborde at that time was a Ford pickup truck, the sale of which is the subject matter of this suit. At the time of the examination, the truck was driven to the place where the judgment examination was conducted and was shown to Adams' counsel by Laborde in order that the counsel could obtain the license number.
Adams caused a writ of seizure of the truck to be issued on October 22, 1981, to satisfy his judgment. On this date the Avoyelles Parish sheriff's office, through a deputy, made an attempt to execute the writ by going to the home of Laborde's former wife where Laborde was known to spend some of his time. The wife was told by the deputy that he had a writ of seizure for Laborde's truck. The former wife told the deputy that Laborde had gone to Catahoula Parish in the truck. The deputy returned the writ as unsatisfied.
On October 26, 1981, the writ was reissued at the request of Adams' attorney. Suddenly, on that same date, Laborde executed a bill of sale transferring the pickup truck to his son-in-law, Elliot Juneau, for the consideration of $100.00 cash. At the time of the sale, the truck was located at the house of Laborde's former wife where the deputy had, on October 22, 1981, attempted the seizure.
Finally, the truck was seized by the sheriff on November 6, 1981, at the home of the purchaser, Juneau, in Hessmer, Louisiana. The sheriff obtained a chattel mortgage certificate from the State which showed that Laborde was the registered owner of the truck. Juneau did not apply for a transfer of title from Laborde until after the seizure. A certificate of title was issued to Juneau on November 18, 1981.
The truck was sold by the sheriff at public auction on December 2, 1981, to Adams for the bid price of $324.00. After the sheriff's sale, Adams attempted to register the truck in his name but was unsuccessful because, by that time, Juneau had caused the title to be registered in his name. Adams retained possession of the truck and filed this revocatory action.
The trial court dismissed Adams' suit concluding that Adams had failed to prove Laborde's intent to defraud. This appeal followed, presenting two issues:
(1) Whether the trial judge erred in failing to find that the transfer of the subject vehicle from father-in-law to son-in-law was not done with intent to defraud the creditor; and
(2) Whether the trial judge erred in not considering the disparity of the actual value of the truck and the alleged sale price as evidence of intent to defraud.
We will consolidate these issues for discussion.
The principles governing revocatory actions are set forth in the case of Morgan v. Gates, 396 So.2d 1386 (La.App. 2nd Cir.1981), as follows:
"The revocatory action is an action which the law grants to every creditor to annul any contract made in fraud of his rights. LSA-C.C. Art. 1970. In order to exercise this action, it must be established that the debtor does not have property sufficient to satisfy the debt of the complaining creditor. LSA-C.C. Art. 1971. Additionally, the complaining creditor must obtain a judgment against his debtor which liquidates the debt owed. LSA-C.C. Art. 1972.
"The following articles impose additional proof requirements on the creditor bringing the revocatory action:
"LSA-C.C. Art. 1978:
`No contract shall be avoided by this action but such as are made in fraud of creditors, and such as, if carried into execution, would have the effect of defrauding them. If made in good faith, it can not be annulled, although it prove injurious to the creditors; and although made in bad faith, it can not be rescinded, unless it operate to their injury.'
"LSA-C.C. Art. 1979:

`If the contract be onerous, and the original debtor made it with intent to defraud his creditors, but the person, with whom he contracted, was in good faith, the contract can not be annulled, *384 except under the circumstances and in the manner hereinafter provided.'

"The prerequisites for the revocatory action have been summarized as follows: (1) insolvency of the debtor; (2) injury to the creditor; (3) intent to defraud the creditor; and (4) preexisting and accrued indebtedness. Redding v. Rupp, 375 So.2d 761 (La.App. 4th Cir.1979), writ denied 378 So.2d 437 (La.1979); Perigoni v. McNiece, 307 So.2d 407 (La.App. 4th Cir. 1974); National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2d Cir.1967)."

Applying these requisites to the facts at hand we conclude as follows:
Laborde, at the time of the sale of the truck, was clearly insolvent. The record showed that judgments in favor of various parties had been recorded against Laborde. These judgments totaled $32,302.93, including the judgment in favor of Adams. Laborde testified that the only property he owned, at the time of the transfer, was the truck. Laborde testified that he was aware of the several outstanding judgments and admitted that they were unpaid.
As to the second requirement "injury to the creditor," it is clear that Adams, as a creditor, was injured by the transfer of the only piece of property owned by Laborde. Also, there is no dispute that the requirement of "preexisting and accrued indebtedness" existed in the form of a prior judgment rendered in favor of Adams. This brings us to the crucial issue of the case, whether there was an intent by Laborde to defraud Adams by the transfer of the truck to his son-in-law, Juneau.
In his oral reasons the trial judge stated, in part as follows:

"Alright. Well, this is the kind of case I just as soon, someone else had. However,... (Inaudible) I say this is a rather close case. The court faced with this ... Shall the court recognize as valid and uphold a vehicle sale registration and the issuance of a title by the State of Louisiana or shall the court recognize as valid and uphold a sheriff's seizure and sale which went uncontested by both defendants. With any, with in the family transactions, meaning transfers between family members, are always highly suspect. In this case it was a father transferring to his son-in-law. Compounding the problem, is the fact that the transferor had a former wife who had knowledge that the sheriff was looking for this particular 1977 truck for the purposes of seizing it under a judgment which has already been obtained. Now this trans ... vehicle transfer was not attacked by the proper party under proper allegation of leison beyond moity (spelled phonetically), although there was a great deal of testimony about the value of the truck.... But in assessing the evidence, the court finds that no fraud or intent to defraud was proved by the evidence on the part of the vehicle seller, which was Lance Laborde." (Emphasis added.)
We quote these reasons principally to show that it is apparent that the trial judge did not consider the large disparity between the value of the truck ($950.00) and the consideration allegedly paid by Juneau to Laborde ($100.00). This is error and will be discussed later in this opinion.
In a revocatory action, a creditor must depend upon all the surrounding facts and circumstances of each case to prove that a debtor intentionally placed his property beyond the reach of the creditor. In this case, as in the usual revocatory action, the debtor (Laborde) denied any intent to defraud. To be successful, the creditor is then faced with the duty of presenting facts and circumstances from which the court can reasonably conclude that the debtor intended to defraud the creditor by the sale of the property.
Laborde was fully aware of the outstanding judgments against him and his complete insolvency. Juneau, the son-in-law, was also aware of Laborde's adverse financial circumstances. Adams had previously pursued the collection of his judgment from Laborde by unsuccessfully attempting to garnish Laborde's wages. Unable to accomplish *385 a garnishment, Adams invoked a seizure of the pickup truck. The judgment debtor examination put Laborde on notice that Adams was inquiring as to the property owned by him. Laborde was acquainted with the process of seizure and its affect. He testified that his property had been seized by other parties on a prior occasion.
The record indicates that Laborde spent substantial time at his former wife's residence. The relationship between them was on an amicable basis. On the day of the first attempted seizure of the truck, the deputy went to the former wife's residence. The deputy knew Laborde and considered that as Laborde's residence. The deputy told the former wife the purpose of his call; i.e., to execute the writ of seizure on the truck. She knew where Laborde was at the time in Catahoula Parish.
Four days later, October 26, 1981, Laborde had his truck parked at his former wife's residence. On that day he suddenly decided to transfer the truck to Juneau for a consideration of only $100.00. The truck remained at the former wife's residence for approximately a week before Juneau moved it to his residence in Hessmer. These facts forcibly indicate that Laborde knew that seizure was imminent at the time he transferred the truck to Juneau. The evidence in this regard is such that the transfer at that time cannot be classified as a coincidence.
An expert, James Odom, testified that the wholesale value of the truck at the time of his examination in December 1981, was approximately $900.00. This estimate was based upon a $1,200.00 value less $300.00 needed for repairs. The purchase price, testified to by Laborde, was only $100.00. No receipt was given for the price paid. The purchase price paid for the truck, if it was paid, in the amount of $100.00, is ridiculously low compared to its value of $900.00.
"The element of good or bad faith or fraudulent intent of the transferrees and the value of the property as compared to the price paid are to be considered in determining the relief to which the plaintiff is entitled under the articles of Civil Code." Morgan v. Gates, supra, at 1389.
As we consider these facts and circumstances, including the sizeable disparity between the actual value of the truck and the price allegedly paid by the son-in-law and the knowledge by Laborde of the imminence of seizure, we conclude that the transfer of the truck by Laborde was made with the intent to defraud Adams, one of Laborde's creditors. The trial court judgment must be reversed.
For the reasons assigned, the judgment of the trial court is reversed, set aside and rendered as follows:
IT IS ORDERED that there be judgment in favor of Glynn C. Adams and against Lance Laborde and Elliot Juneau declaring the transfer of title of the 1977 Ford pickup truck bearing Motor Vehicle F15SN090374 from Laborde to Juneau to be null and void, and the registration thereof shall be deemed of no effect.
IT IS FURTHER ORDERED that the judicial sale, on December 2, 1981, of the 1977 Ford pickup truck bearing Motor Number F15SN090374 to Glynn C. Adams is hereby recognized as being valid and effective. Adams is hereby declared the owner of the truck along with all the rights of registration of the vehicle according to law.
IT IS FURTHER ORDERED that the reconventional demand of Elliot Juneau be dismissed.
IT IS FURTHER ORDERED that the expert witness fee of James Odom be fixed at $150.00 and shall be taxed as costs.
All costs of the trial court and this appeal shall be paid by Lance Laborde and Elliot Juneau, defendants-appellees.
REVERSED; SET ASIDE AND RENDERED.