476 So.2d 1141 (1985)
R. Ralph KEYS, et ux., Plaintiffs-Appellees,
v.
Milford E. BOX, Defendant, and
Carolyn Ann Box Rollo and Kathy Renee Box Phillips, Defendants-Appellants.
No. 84-705.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1985.
*1143 Gold, Simon, Weems, Bruser, Sharp, Sues & Lundell, Dee D. Drell, Alexandria, for defendants-appellants.
John W. Luster of Luster and Conine, Natchitoches, for defendant-appellee.
Kenneth D. McCoy, Jr., Natchitoches, for plaintiffs-appellees.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
DOMENGEAUX, Judge.
This appeal follows the plaintiffs-appellees' successful suit to revoke Milford Box's renunciation of a usufruct in favor of his two daughters, Carolyn Ann Box Rollo (now Juby) and Kathy Renee Box Phillips.
It is important to set out the factual and procedural history of this case. Milford Box and his wife Barbara originally owned a lot and home located on Parkway Drive in the City of Natchitoches, Louisiana. Upon Barbara's death, Milford and his daughters became co-owners in indivision of the Parkway Drive property, with the father holding a legal usufruct over his daughters' undivided one-half portion.
In a deed dated August 5, 1975, Milford Box sold his one-half undivided interest in the Parkway Drive property to his daughters. The deed further recited that the "vendor reserves the usufruct of the property herein sold and conveyed during the remainder of his life and the purchasers grant the vendor a lifetime usufruct of said property ...." (Our emphasis). As will be discussed under Assignment of Error No. 4 it is necessary for us to decide whether the deed conveyed 100% or only some lesser amount of the usus and fructus of the entire Parkway Drive property.
Milford Box was remarried to Sandra Phillips Box after the transfer of August 5, 1975. When Mr. Box remarried, his onehalf legal usufruct on the Parkway Drive property terminated. La.C.C. Art. 890. However, Mr. Box's remarriage did not affect the usufruct granted in the deed of August 5, 1975 because of its conventional nature.
In 1976, Mr. Box obtained a personal loan from the First Federal Savings & Loan Association of Natchitoches. As security for the loan a first mortgage was placed on the Parkway Drive property, naming as mortgagors Milford Box and his two daughters, Carolyn and Kathy. In 1979, a second mortgage was confected in favor of the City Bank and Trust Company of Natchitoches to secure another loan to Mr. Box. The mortgagors bound by this second mortgage were Milford and Sandra Box, Carolyn Box Rollo, and Kathy Box Phillips.
It is alleged by appellants that Milford and Sandra Box moved to Texas, at the *1144 latest, during the first few days of 1980. However, appellees introduced at trial three authentic acts passed by Milford Box on January 3rd and 4th of 1980, wherein he recited he was domiciled in Natchitoches Parish, Louisiana. Further, the utilities at the Box home remained in Milford's name until January 15, 1980.
On January 2, 1980, three suits were filed against Milford Box by the Home Loan Company, Inc. Home Loan Company sought to recover on overdue unsecured promissory notes. The court determined that Mr. Box was an absentee and appointed a "curator ad hoc" to receive service for and represent Mr. Box.
Milford Box's notes secured by the second mortgage at the City Bank became delinquent and were deemed in default. To protect its interest as a second mortgagee, City Bank filed a foreclosure suit on the Parkway Drive property on January 15, 1980. Fearful of losing the property, Carolyn and Kathy attempted to refinance the loan with City Bank. The Bank agreed, conditioned upon the daughters obtaining their father's renunciation of the usufruct over the property. The renunciation was made in Lufkin, Texas, on January 18, 1980. Accordingly, the foreclosure suit was voluntarily dismissed and the debt secured by the City Bank's second mortgage was refinanced.
After the refinancing of the second mortgage by City Bank occurred, the three suits filed by the Home Loan Company went to trial and all judgments were rendered in the plaintiff's favor. Thereafter, Home Loan Company assigned its interest in the judgments to Ralph and Elizabeth Keys, appellees herein. The Keys, after attempting to collect on the judgments, instituted this suit on October 17, 1980, to revoke Milford Box's renunciation of his usufruct. The suit was based on the grounds of fraud, simulation, and lesion; the latter two grounds were abandoned at trial.
On October 29, 1980, Carolyn and Kathy sold the Parkway Drive property to Mr. and Mrs. Burk for $150,000.00. The proceeds of the sale were partially used to satisfy the debts secured by the first and second mortgages. The remainder of the purchase price, approximately $20,000.00, was put in an escrow account pursuant to an "Escrow Agreement" entered into by the Keys' and Carolyn and Kathy.
It is this $20,000.00 plus interest held in escrow which plaintiffs-appellees sought to seize in the suit below to partially satisfy their judgments against Milford Box. The trial court decided in the plaintiffs' favor revoking the usufruct renunciation and awarding all funds held in escrow to the plaintiffs. The trial court further awarded the sum of $760.00 to Randy LaCaze as an expert witness fee, and $400.00 to John Luster, Esq. for his curator's fee and taxed both as costs. This devolutive appeal followed the trial court's judgment.
The appellants, Carolyn Ann Box Rollo and Kathy Renee Box Phillips, have assigned five specifications of error, formulated as follows:
"It is respectfully submitted that the Trial Court erred:
1. In neglecting or declining to find that the original suits upon which plaintiffs' claims were based were an invalid basis [sic];
2. In finding that the usufruct renunciation was subject to the revocatory action and in ordering the renunciation `revoked, null and void, and of no legal efficacy.';
3. In neglecting or declining to find that plaintiffs had no right to seize Milford Box's interest as a usufructuary;
4. In finding that the usufruct in this case had any substantial value, and generally in failing to deduct from any valuation of the usufruct the indebtedness attaching to it;
5. In opining that the City Bank was entitled to part of the escrowed funds when, in fact, the City Bank is not a party to these proceedings."
For the purposes of this opinion, we choose to alter the order in which we discuss these various assignments.

*1145 SPECIFICATION OF ERROR NO. 1
Appellants allege that improper service of process and other defects rendered invalid the prior judgments upon which appellees rely in seeking to revoke the usufruct renunciation. As their first supporting argument appellants claim that there was no personal service on Milford Box in the two prior suits filed by the Home Loan Company, and that such service is a necessary pre-requisite for a valid money judgment. It is imperative that a court have personal jurisdiction over a party in order for a money judgment to be rendered against him. Pennoyer v. Neff, 95 U.S. (5 otto.) 714, 24 L.Ed. 565 (1878); Imperial v. Hardy, 302 So.2d 5 (La.1974); La.C.C.P. Art. 6. However, personal service is not the only way a court can obtain personal jurisdiction over a defendant. La.C.C.P. Art. 6(2) allows "service of process on the attorney at law appointed by the court to defend an action or proceeding brought against an absent or incompetent defendant who is domiciled in this state." Therefore, we must inquire as to whether Mr. Box was a Louisiana domiciliary and whether he was an "absentee" at the time the two prior suits were filed.
We first note that determination of domicile is a factual question. Slocum v. DeWitt, 374 So.2d 755 (La.App. 3rd Cir. 1979), writ denied, 375 So.2d 1182 (La. 1979). As such, the trial court's decision cannot be reversed on appeal if it appears there was a reasonable factual basis for the determination and that the decision was not clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), Watson v. State Farm Fire & Casualty Insurance Company, 469 So.2d 967 (La.1985).
The prior suits, leading to the judgments which appellees seek to satisfy, were filed on January 2, 1980, naming Milford Box as defendant. On January 3rd and 4th of that year, Mr. Box passed three authentic acts wherein he recited that he was a resident of Natchitoches Parish, Louisiana. Further, the utilities on the Box home remained in the defendant's name until approximately January 15, 1980, and Mr. Box has remained a registered voter of Natchitoches Parish. Under the above-recited circumstances we cannot say that the trial court's ruling that Mr. Box was a Louisiana domiciliary as of January 2, 1980, was manifestly erroneous. The argument that Mr. Box was not a Louisiana domiciliary at the time the prior suits were filed by the Home Loan Company is without merit.
We also find that Mr. Box was an "absentee" as defined by La.C.C.P. Art. 5251(1), which states:
"`Absentee' means a person who is either a nonresident of this state, or a person who is domiciled in but has departed from this state, and who has not appointed an agent for the service of process in this state in the manner directed by law; or a person whose whereabouts are unknown, or who cannot be found and served after a diligent effort, though he may be domiciled or actually present in the state; or a person who may be dead, though the fact of his death is not known, and if dead his heirs are unknown."
Although appellants maintain that Mr. Box departed for Texas before the suits were filed against him, we are confident that, at the very least, Mr. Box was not available for service of process when it was attempted. Such being the case Mr. Box was an absentee and service on the attorney appointed to represent him was proper. See La.C.C.P. Art. 6(2).
Appellants further contend that even if service under La.C.C.P. Art. 6(2) was in order, service was nevertheless invalid because it was made on a "curator ad hoc". "The improper designation of the attorney appointed by the court to represent such a defendant as curator ad hoc, tutor ad hoc, special tutor, or any other title, does not affect the validity of the proceeding." La.C.C.P. Art. 5091.
The second argument upon which appellants rely to support their assignment that the prior judgments are insufficient to support appellees' suit to revoke the usufruct *1146 renunciation is that premature execution on the judgments below resulted in the invalidity of those judgments. However, any objection to premature execution is waived where, as here, no appeal is taken from the judgment. Haas v. Buck, 182 La. 566, 162 So. 181 (1935); Legier v. Legier, 357 So.2d 1203 (La.App. 4th Cir.1978); see also, Official Revision Comment (b), La.C. C.P. Art. 2252.
Appellants' third argument, that the records of the two suits below are inadequate on their faces to support the judgments serving as the bases of the appellees' claims herein, was neither argued nor briefed. Therefore, it is considered abandoned. Gautreaux v. Pierre, 254 So.2d 476 (La.App. 3rd Cir.1971).

SPECIFICATION OF ERROR NO. 3
Appellants' third specification of error alleges the trial court erred in not finding that a usufruct is exempt from seizure. The argument is based on La.R.S. 13:3881, which provides in pertinent part:
"A. The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever:
* * * * * *
(3) A right of personal servitude, of use and habitation, of usufruct of the estate of a minor child, and the income from dotal property; ...."
Arguing that inasmuch as a usufruct is a personal servitude under La.C.C. Art. 534, appellants maintain that the above-quoted statute precludes the seizure of Mr. Box's prior interest in the Parkway Drive property.
Although when read broadly La.R.S. 13:3881 seems to exempt all personal servitudes from seizure by creditors, we cannot agree with that construction of the statute. First, Section A(3) of the statute specifically lists two of the three categories of personal servitudes, use and habitation. The statute also includes an exemption for usufructs of the estates of minor children. In view of the specificity of the statute, the glaring omission of the broad third category of personal servitudes leads us to believe that usufructs in general were not intended to be exempted from seizure.
Secondly, and in support of the above statutory interpretation, we note that C.C. Arts. 620 and 626 refer to the interest a creditor may have in its debtor's usufruct. La.C.C. Art. 620 even goes so far as to explain the effect on the usufruct when creditors of the usufructuary seize and sell his interest. The property of a debtor is the common pledge of his creditors. La. C.C. Art. 3183. This maxim applies to a debtor's usufruct as well. Specification of Error No. 3 is without merit.

SPECIFICATIONS OF ERRORS NOS. 2 AND 4
Appellants' second specification of error raises the issues of whether the appellees have the right to sue to revoke the usufruct renunciation, and whether they have proven each and every element of the cause of action. As will be discussed more fully below, in considering this latter issue it is necessary for us to decide if the appellees suffered prejudice because of the usufruct renunciation. Such a determination forces us to address appellants' fourth specification of error alleging that the usufruct was improperly evaluated.
Appellants claim that appellees have no right of action to sue to revoke the usufruct renunciation. Their arguments are based on an incomplete understanding of the Louisiana Civil Code Articles which they cite.[1] Generally, appellants maintain *1147 that no creditor can sue to annul a contract made before his debt accrued. La.C.C. Art. 1993. However, a debt need not be reduced to judgment to have "accrued". See National Bank of Bossier City v. Hardcastle, 204 So.2d 142 (La.App. 2nd Cir. 1967), where the court held that the debt had "accrued", despite a refinancing of the debt which took place after the transfer sought to be revoked had occurred.
It is true that La.C.C. Art. 1972 requires that the debt be liquidated by judgment before suit to revoke a fraudulent transfer will lie. Appellants claim this Article requires creditors of a debtor to liquidate their debt by judgment before the fraudulent transaction occurs. However, both Civil Code Articles 1972 and 1975 allow a plaintiff to combine an action to annul a contract with one against the original debtor to liquidate the debt. Further, La.C.C. Art. 1970, the Article authorizing revocatory actions, makes no distinction between creditors whose claims are liquidated and those whose are not. Ventrilla v. Tortorice, 160 La. 516, 107 So. 390 (1926).
In this case the debts owed to Home Loan Company had accrued at least by the time those suits were filed against Mr. Box on January 2, 1980. Although the transfer here sought to be annuled occurred prior to the rendition of judgment in those suits, the appellees were nevertheless entitled to bring an action to revoke the usufruct renunciation.
We now address the issue of whether appellees have proven the elements of a cause of action in revocation. Those elements are (a) insolvency of the debtor, (b) injury to the creditor, (c) intent to defraud the creditor, and (d) a pre-existing and accrued indebtedness. Adams v. Laborde, 430 So.2d 381 (La.App. 3rd Cir.1983).
Milford Box's insolvency is not contested. However, whether there has been injury to the creditor is in dispute. Appellants allege that the appellees were not prejudiced by the usufruct renunciation because (1) the appellees' expert's evaluation of the usufruct was far above its actual value, and (2) that had there been no renunciation the foreclosure by the City Bank would have left appellees in no better condition than if the renunciation is upheld.
A successful action to annul a transfer made in fraud of a creditor's rights annuls the transfer only insofar as the transaction affects the creditor. Succession of Schultz, 18 La. 402, 2 So. 47 (1887). Therefore, since the property was sold by the daughters, who at the time of the sale were full owners, a revocation of the usufruct renunciation would give the appellees the benefit of the usufruct over the proceeds of the sale, or what was left after the prior mortgages were paid, no matter what the actual value of the usufruct was. La.C.C. Art. 615. Accordingly, we find that the expert's evaluation of the usufruct is not relevant in deciding whether the creditors herein have suffered injury.
Since a successful action in revocation would give the appellees the benefit of Mr. Box's usufruct to satisfy their judgment, it is necessary for us to decide how much of the usufruct Mr. Box originally held. Once that issue is settled, this Court can determine how much of the money held in escrow is available to the appellees. If there is any amount in escrow subject to the former usufruct, appellees have proven their "injury". This follows because if the renunciation is not revoked, the appellees have no right to any of the money in escrow as all of the funds proceeding from the sale of the Parkway Drive property would belong to Carolyn and Kathy, and therefore, not available to Mr. Box's creditors.
Appellees claim the deed of August 5, 1975 granted Mr. Box a life usufruct over *1148 the entirety of the Parkway Drive property. Appellants maintain that Mr. Box's interest in the property is limited to a onequarter usufruct. This latter position is based on the arguments that the most the deed of August 5, 1975 purported to transfer to Mr. Box was a one-half usufruct, and that since Kathy was a minor at the time of the transfer (having been born March 24, 1959) she was incapable of granting a usufruct over her one-half of the one-half usufruct purportedly conveyed in the deed.[2]
The deed in question provides that:
"... personally came and appeared Milford E. Box, surviving husband of Barbara Dean Box, deceased, who declared that for the consideration hereinafter expressed he does by these presents grant, bargain, sell, convey and deliver unto Carolyn Ann Box Keyser, wife of Joe Keyser and Kathy Renee Box, a single woman, the following described property, to-wit:

All of his undivided right, title and interest in and to Lots 7 and 8 of Block F of Parkway Drive Subdivision to the City of Natchitoches, Parish of Natchitoches, Louisiana, as per plat of survey recorded in Map Book 1, Page 50, of the records of Natchitoches Parish, Louisiana.
The consideration for which this sale and transfer is made is the price and sum of $1,000.00 cash in hand paid and other good and valuable considerations.
The vendor reserves the usufruct of the property herein sold and conveyed during the remainder of his life and the purchasers grant the vendor a lifetime usufruct of said property in all other respects this sale is made with full warranty of title." (Our emphasis).
At the time of this transfer, Mr. Box's "undivided right, title and interest" in the Parkway Drive property consisted of a one-half undivided interest therein. This is because upon the death of Barbara Dean Box, her one-half interest in the community property devolved upon her heirsher two daughters, Carolyn and Kathy. The deed recites that Mr. Box reserved a usufruct on the property sold (i.e., his one-half interest), and in the same sentence provides that the vendees granted a usufruct over said property. We are compelled by the wording of the deed to conclude that "said property" referred to "the property herein sold" earlier in that sentence. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.C.C. Art. 2046.
Having established that the deed purported to convey only a one-half usufruct to Mr. Box, we must now determine whether Kathy was competent to contract away her one-half of that interest, and what consequences would follow in the wake of her incapacity. Kathy Renee Box Phillips was born on March 24, 1959. The above-referred to transaction occurred on August 5, 1975. Therefore Kathy was only 16 and unmarried at the time of the transfer, which made her a minor according to La.C.C. Art. 37. As a minor, any contracts which Kathy confected are relatively null. La.C.C. Arts. 1785 and 2221. However, the applicable Civil Code articles in effect at the time of the transfer provide that a relatively null contract cannot be rescinded after ten years from the time the ground for nullity ceased. La.C.C. Art. 2221. Kathy *1149 became a major on March 24, 1977. Since Kathy has not yet filed an action to rescind, as of the time of these proceedings the contract granting her one-quarter interest in the usus and fructus of the Parkway Drive property is still in effect. Therefore, at the time of the usufruct renunciation Mr. Box owned a one-half usufruct instead of a usufruct over the entirety of the Parkway Drive property. As this is the case, appellants' fourth specification of error has merit and the creditor-appellees are entitled only to Mr. Box's one-half interest in the money held in escrow.
However, since the creditor-appellees have an interest in one-half of the money held in escrow, they have proven their "injury". This follows because if no revocation of the renunciation had occurred, the appellees would have no right to any of the money in escrow. The appellees have proven the second element of a cause of action in revocation.
We now turn to the third element of a cause of action in revocationwhether appellees have proven an intent on the part of Mr. Box to defraud his creditors, the appellees. Appellees are aided in their burden by La.C.C. Art. 1980 which presumes an intent to defraud creditors if at the time of a gratuitous transfer the debtor did not have in his net estate more than twice the value of the property transferred. As stated before, it is uncontested that Mr. Box was insolvent at the time of the usufruct renunciation. Further, the trial court found that the renunciation was gratuitous. We can find no manifest error in this determination. Appellees did not produce proof of the alleged $1,000.00 money order payment for the usufruct renunciation. Further, the only evidence set forth to overcome the presumption of fraud was that the renunciation was made to allow the daughters to refinance another debt. However, as the renunciation came on the heels of the filing of appellees' assignor's suits on promissory notes, we cannot say that the trial court was manifestly erroneous in deciding to revoke the usufruct renunciation.
Confronting the last element of a cause of action in revocation, whether there was a pre-existing and accrued indebtedness, we refer to Specification of Error No. 1 and find the last element present. Therefore, as all the elements of the cause of action in revocation have been proven, appellants' second assignment of error is without merit.

SPECIFICATION OF ERROR NO. 5
Lastly we explore the validity of appellant's fifth specification. The error alleged is that the trial judge, in his written reasons for judgment, opined that any monies held in escrow in excess of appellees' judgments would belong to the City Bank and Trust Company. As the City Bank was never a party to this suit to revoke the usufruct renunciation, appellants' argument that the trial court's opinion was erroneous is correct. However, the judgment rendered by the trial court made no award to the City Bank, and appeals are taken from adverse judgments, not opinions. "The trial court's written reasons, while defining and elucidating the principles upon which he is deciding a case, form no part of the official judgment he signs and from which appeals are taken." Sullivan v. Gulf States Utilities Company, 382 So.2d 184 (La.App. 1st Cir.1980), writ denied, 384 So.2d 447 (La.1980). This assignment is not properly before us as it does not raise an error in the lower court's judgment.
Our above treatment of the appellants' specifications of error establishes that the judgments on the suits filed by the Home Loan Company were valid, and that the assignment of those judgments to the appellees made them judgment creditors of Mr. Box. We also find that a usufruct is a seizable asset of a debtor, and therefore, the alienation of a usufructuary's interest in fraud of his creditor's rights is subject to the revocatory action. Further, appellees amply proved their case in revocation in the trial court. However, since the instrument of conveyance dated August 5, 1975 merely transferred Mr. Box's one-half interest in *1150 the Parkway Drive property to his daughters, the usufruct reserved by the vendor and granted by the vendees on said property consisted of a mere one-half interest. We have previously determined that a revocation of the usufruct renunciation would make available to the creditors-appellees that percentage of the Box usufruct which attaches to the proceeds of the sale of the property held in escrow. In this respect we must reverse the trial court's judgment insofar as it awards the entire amounts in escrow to plaintiffs-appellees. Since Mr. Box owned only a one-half usufruct, his creditors have no right to seize any greater percentage of the funds in escrow.
For the above and foregoing reasons the judgment of the district court is recast, and it is hereby Ordered, Adjudged, and Decreed that the plaintiffs-appellees, Ralph and Elizabeth Keys, be awarded one-half of the $20,000.00 principal together with onehalf of the accrued interest thereon held in escrow by the Escrow Agent, City Bank and Trust Company of Natchitoches, in Individual Savings Account # XX-XXXX-X, styled "City BankEscrow AgentC. Box Rollo, et al, c/o J.E. Pierson, Natchitoches, Louisiana." It is further Ordered, Adjudged, and Decreed that the other one-half of the escrowed principal and interest are the property of the defendants-appellants, Carolyn Ann Box Rollo and Kathy Renee Box Phillips.
It is furthermore Ordered, Adjudged, and Decreed that the expert witness fees of Randy S. LaCaze be and the same are hereby fixed at the sum of $760.00 and taxed as costs of these proceedings. It is furthermore Ordered, Adjudged, and Decreed that the curator's fee of John W. Luster, Esq., be and the same is hereby fixed at the sum of $400.00 and taxed as costs of these proceedings.
All costs, at trial and on appeal, are assessed one-half to appellees and one-half to appellants.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] This appeal arose prior to the effective date of the 1984 Obligations Revision of the Civil Code. Therefore, some of the codal articles relied on by the parties and referred to in this opinion are pre-Revision. For the readers' reference we note the pre- and post- Revision article numbers.

PRE-REVISION POST-REVISION CC 1970 CC 2036
 CC 1993 _____ CC 1785 CC 1918, 1923, 2031
 CC 1972 _____ CC 2221 CC 2032
 CC 1975 _____ CC 1980 CC 2039

[2] The trial judge was not presented with, and therefore did not decide, the issue of Kathy Renee Box Phillips' minority.

"[O]rdinarily issues not passed on by the trial court are not reviewed by the appellate court, but the appellate court, in discharging its duty to render judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the necessary evidence to determine the question, even though no ruling was made on that issue by the trial court, LSA-C.C.P. Article 2164, and Comment a under that article."
Placid Oil Company v. Taylor, 313 So.2d 626 (La.App. 3rd Cir.1975), writ granted and remanded for rehearing, 318 So.2d 40 (La.1975), on remand 325 So.2d 313 (La.App. 3rd Cir. 1975), writ denied, 329 So.2d 455 (La. 1976). For the reasons expressed in this opinion, we find it in the interest of justice to consider the issue of Kathy Renee Box Phillips' minority.