587 So.2d 812 (1991)
OPELOUSAS PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellant,
v.
B.B. & H., INC., Defendant-Appellee.
No. 90-222.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
*813 Blake Deshotel, Ville Platte, for plaintiff-appellant.
A. Frank McGee, Eunice, for defendant-appellee.
Before GUIDRY, YELVERTON and KNOLL, JJ.
GUIDRY, Judge.
On August 17, 1984, Opelousas Production Credit Association (hereafter OPCA) filed suit against B.B. & H., Inc. seeking to set aside a sale of mineral rights from Alfred and Hilda Bollich, debtors of OPCA, to B.B. & H., Inc. Percy J. Fontenot, as guarantor of the Bollichs' debt to OPCA, paid off the Bollichs' debt and obtained OPCA's rights in this lawsuit by an act of assignment. By amending and supplemental petition, Percy J. Fontenot was named party plaintiff in place of OPCA.
B.B. & H., Inc. responded to plaintiff's suit by filing a peremptory exception of no cause of action which was sustained by the trial court. Fontenot appealed the trial court's ruling and we reversed finding that Fontenot's petition did contain sufficient allegations to state a revocatory action. Opelousas Production Credit Association v. B.B. & H., Inc., 525 So.2d 91 (La.App. 3rd Cir.1988). We further observed that the Bollichs were indispensable parties to this suit and accordingly, ordered plaintiff to amend his petition to name the Bollichs as additional defendants. Subsequently, Fontenot amended his petition to name Alfred and Hilda Bollich as party defendants.
At the trial on the merits, it was established that Alfred and Hilda Bollich borrowed money from OPCA in 1981 and 1982 to fund Alfred Bollich's farming operation. During this period, Albert Bollich was farming land owned by plaintiff, Percy J. Fontenot. In 1982, in order to facilitate the renewal of the Bollichs' loan with OPCA, Fontenot executed a continuing guaranty of the Bollichs' loan in favor of OPCA. On August 18, 1983, the Bollichs sold their mineral interest in two tracts of property for the sum of $10,000 to B.B. & H., Inc., a corporation whose shareholders are all members of the Bollich family. Approximately ten months later, the Bollichs filed for protection under the bankruptcy provisions of 11 U.S.C. Chapter 7. This suit followed.
The trial court rendered judgment in favor of defendants and dismissed plaintiff's suit finding that under the pre-revision Civil Code Articles 1970 et seq., while plaintiff proved at the time of the sale that the Bollichs were indebted to OPCA and insolvent, the evidence did not support the conclusion that the Bollichs intended to defraud OPCA.
At the time of the sale of the mineral rights, i.e., August 17, 1983, our law required proof by plaintiff in a revocatory action of the insolvency of the debtor, injury to the creditor, a pre-existing and accrued indebtedness as well as proof of the debtor's intent to defraud the creditor. Keys v. Box, 476 So.2d 1141 (La.App. 3rd Cir.1985). In the 1984 obligations revision of the Civil Code (effective January 1, 1985), the legislature dispensed with fraud as the principal criterion for revocatory actions and adopted instead the criterion of whether the debtor's act or omission caused or increased his insolvency. Succession of Clare Fogarty Neuhauser, 579 So.2d 437 (La.1991). Inasmuch as this revision was a substantive change in the law and thus not applicable retroactively, the trial court was correct in applying the pre-revision codal provisions.
*814 On appeal, plaintiff contends that the trial court erred in finding that he failed to prove the element of fraud.
A creditor must present facts and circumstances from which the court can reasonably conclude that the debtor intended to defraud the creditor by the sale of the property. Adams v. Laborde, 430 So.2d 381 (La.App. 3rd Cir.1983).
The explanation offered by Alfred Bollich for the sale of the mineral interest was that he had cash flow problems in August of 1983 and did not expect to have a crop payment for another six or seven months. He explained that his problem arose as a result of his daughter's college expenses and he and his wife's personal expenses. He also stated that his offer to sell his mineral interest to B.B. & H., Inc. for $10,000 was based on his own personal estimate of its worth. Bollich's explanation is not contradicted in the record.
In Adams v. Laborde, supra, this court found that a large disparity between the value of the thing sold and the consideration actually paid for it is a factor indicative of an intent to defraud the creditor. In this connection, Fontenot presented the testimony of James E. Moncrief in an effort to establish a sizeable disparity between the actual value of the mineral interest sold and the sales price. Moncrief, a petroleum geologist, was qualified as an expert in the field of petroleum geology and more specifically in the valuation of oil and gas producing properties. Moncrief opined that the mineral interest sold by the Bollichs had a market value at the time of the sale of $50,000. Moncrief testified that he arrived at the figure of $50,000 by taking the annual royalty income derived from these properties and multiplying that figure by 2.5, which represents a two and one-half year payout. According to Moncrief, this method of valuation is widely accepted in the oil and gas industry. Moncrief further stated that he did not do a detailed analysis of these properties which would have consisted of such efforts as reviewing sub-surface structure maps and performing flow rate and bottom hole pressure tests. Instead, Moncrief relied principally on past annual income derived from these properties in arriving at his valuation.
James Bollich, the president of B.B. & H., Inc. and brother of Alfred Bollich, testified both as a fact witness and as an expert in the field of geology. Defendant's expert questioned the reliability of Moncrief's evaluation of the interest sold stating that some analysis of the reserves of these producing properties must be employed to obtain a credible valuation. Bollich noted that he was not privy to the information necessary to make an appraisal of the value of the mineral interest in question. However, he stated that because of the nature of the sands underlying the Bollich property, the erratic production history, and the age of the wells then on the property, any value assigned to the mineral interest in August of 1983 was highly speculative.
The trial court, in its written reasons, was silent on the question of the disparity between the sales price and the value attached to these properties by plaintiff's expert simply concluding, on the basis of all of the evidence presented, that plaintiff failed to establish by a preponderance of the evidence a fraudulent intent on the part of the Bollichs.
We find no clear error in the trial court's conclusion. While a serious disparity between the actual value of the mineral interests and the sales price would be a strong indication of fraud, in light of the conflicting testimony of the experts, we cannot say that the trial court erred in this regard. Where the testimony of expert witnesses differ, it is for the trier of fact to determine the most credible evidence and a finding of fact in this regard will not be overturned absent manifest error. Nailor v. International Harvester Co., 430 So.2d 784 (La.App. 5th Cir.1983), writ denied, 437 So.2d 1148 (La.1983).
Accordingly, for these reasons, the trial court's judgment is affirmed at plaintiff's costs.
AFFIRMED.